Clarence M. **DITLOW**, Appellant,

v.

George P. **SHULTZ**, Secretary, Department of Treasury.

No. 74–1975.

United States Court of Appeals, District of Columbia Circuit.

Argued June 17, 1975.

Decided Aug. 11, 1975.

---

Girardeau A. Spann, Washington, D. C., for appellant. Larry P. Ellsworth, Washington, D. C., was on the brief for appellant. Alan B. Morrison, Washington, D. C., also entered an appearance for appellant.

Paul Blankenstein, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on the brief for appellee. Thomas G. Wilson, Atty., Dept. of Justice, also entered an appearance for appellee.

Before LEVENTHAL and ROBB, *Circuit Judges,* and MERHIGE,* *United States District Judge* for the Eastern District of Virginia.

Opinion for the Court filed by *Circuit Judge* LEVENTHAL.

LEVENTHAL, *Circuit Judge*:

I.

This case involves a Freedom of Information Act (FOIA) action brought to obtain the name, address, and flight number information in the Government's files of Customs Declarations Forms

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

6059–B, forms completed by travelers returning to the United States.

Appellant Clarence M. Ditlow proposes to use these data to assemble a list of class members in conjunction with an antitrust class action he has filed alleging overcharges by ten airlines on flights to the United States from points in the Transpacific airline market between May 1, 1973, and September 1, 1973.[1] In the present FOIA action, he seeks an order requiring the Secretary of the Treasury to safeguard the forms against destruction to assure their availability for later use in identifying the antitrust class[2] and a declaratory ruling that he is entitled to the requested information when and if the class is certified.[3]

Prior to bringing this action, appellant wrote the Commissioner of Customs requesting the name and address information from pertinent 6059–B forms. The Bureau of Customs denied the request on the grounds that the information was exempt from disclosure under the (b)(4), commercial and financial information, and (b)(6), personal privacy, exemptions.

of the FOIA. The Commissioner stated that he "fully considered the advisability of making a discretionary disclosure" of the requested data but decided "against discretionary disclosure . . . based upon our policy of protecting the right of privacy of international travelers."[4]

The District Court granted the Secretary's motion for summary judgment, finding that although the (b)(4) exemption was inapplicable, the information came within the (b)(6) exemption of files the disclosure of which would result in a "clearly unwarranted invasion of personal privacy."[5] More specifically, the court concluded that disclosure of the names and addresses "would constitute a substantial invasion of privacy" and that there were "other sufficient sources of information."[6] Plaintiff Ditlow appealed from the summary judgment ruling.

## II.

The sole issue on appeal is the validity of the District Court's determination that the requested material is ex-

1. No. 999–73 (D.D.C., filed May 22, 1973). The District Court entered an order granting the defendant airlines summary judgment on April 25, 1975. The plaintiff has appealed this order. *See* text at notes 28–29 *infra*.

2. Appellant indicates that the 6059–B forms are ordinarily destroyed one year after they are obtained. *See* Brief for Appellant at 5 citing Levine v. United States, No. 73–1315, slip op. at 5 (S.D.Fla., Mar. 22, 1974). By letter of October 9, 1974, appellee consented to preserve the customs declarations involved in this action pending resolution this case. *See* Letter from Arnold T. Aikens, Chief, Civil Division, to Raymond T. Bonner, Oct. 9, 1974, *reprinted at* Brief for Appellant at a–15.

3. *See* Brief for Appellant at 15. In his requests to the Bureau of Customs and his papers in the District Court, appellant's attempt to obtain disclosure of the name, address, and flight number data was not conditioned on certification of the antitrust class. *See* JA 8–9 (Letter from Raymond T. Bonner to Regional Commissioners of Customs, May 24, 1973), JA 2–4 (Complaint in No. 74–302, D.D.C., filed Feb. 15, 1974).

4. JA 16. By letter of May 24, 1973, appellant requested data from the 6059–B forms from

the Regional Commissioners of Customs in Los Angeles and San Francisco (JA 8–9). That request was denied on the grounds that the "declarations contain commercial or financial information which is exempt from disclosure under the provisions of 5 U.S.C. 552(b)(4) and section 103.7(d) of the Customs Regulations." Letter from Leonard Lehman, Assistant Commissioner of Customs, to Raymond T. Bonner, July 31, 1973. (JA 10). Next appellant appealed this denial to the Commissioner of Customs. On August 27, 1973, the Commissioner denied the appeal, stating that the material came within both the (b)(4) commercial or financial information exemption and the (b)(6) privacy exemption. Letter from Vernon D. Acree to Raymond T. Bonner. (JA 12–13). Before filing this action, appellant again wrote Commissioner Acree seeking disclosure. The Commissioner remained steadfast in his view that release of the data would violate exemption 6 and he declined to make a discretionary disclosure to appellant. Letter from Vernon D. Acree to Raymond T. Bonner, Feb. 11, 1974. (JA 16).

5. Ditlow v. Shultz, 379 F.Supp. 326 (D.D.C. 1974).

6. *Id.* at 331.

empt under 5 U.S.C. § 552(b)(6) (1970). That section provides:

(b) This section does not apply to matters that are—

. . . . .

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

In order to justify denial of appellant's request based on exemption 6, the Secretary must show both that the material sought qualifies as a personnel, medical, or similar file and that disclosure would constitute a "clearly unwarranted invasion of personal privacy." [7] In ruling on FOIA appeals, we are mindful that the Act "creates a liberal disclosure requirement, limited only by specific exemptions which are to be narrowly construed." [8] In addition to the Act's general presumption of disclosure, the "clearly unwarranted invasion of personal privacy" language expresses "a carefully considered congressional policy favoring disclosure" which "instructs the court to tilt the balance in favor of disclosure." [9]

This case presents a number of difficult questions concerning the interpretation and implementation of exemption 6. We shall sketch some of these problems. An initial issue is whether the requested material qualifies as a "similar file" since it clearly is neither a personnel nor a medical file. Our *Rural Housing* decision noted that the (b)(6) "exemption was designed to protect individuals from public disclosure of intimate details of their lives" and concluded that the "similar files" language was intended "broadly to protect individuals from a wide range of embarrassing disclosures." [10] The District Court determined that the completed customs forms including the travelers' "names, ages, citizenship, residency, permanent addresses, addresses while in the United States, the names and relationship of family members, personal finances, when and where their visas were issued, and all acquisitions while abroad, including the price thereof" constituted "similar files." [11] In reviewing that determination, we not only are faced with evaluating whether this information includes " 'intimate details' of a 'highly personal nature' " but are also confronted with the question whether the entire form or merely the requested name, address, and flight number information must be adjudged a similar file for the exemption to be invoked.[12]

7. *See, e. g.,* Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 135 (3d Cir. 1974); Rural Housing Alliance v. Dept. of Agriculture, 162 U.S.App. D.C. 122, 126, 498 F.2d 73, 77 (1974); Getman v. NLRB, 146 U.S.App.D.C. 209, 213, 450 F.2d 670, 674, *stay denied,* 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8 (1971) (Black, Acting Circuit Justice); Note, *The Freedom of Information Act: A Seven-Year Assignment,* 74 *Colum.L. Rev.* 895, 953 (1974).

It is well established that the governmental agency has the burden of establishing that the requested material comes within one of the exceptions. *See* Robles v. EPA, 484 F.2d 843, 845 (4th Cir. 1973); Getman v. NLRB, *supra,* at 213, 450 F.2d at 774.

8. *See* Bristol-Myers Co., v. FTC, 138 U.S.App. D.C. 22, 25, 424 F.2d 935, 938 (1970).

9. Getman v. NLRB, *supra* note 7, at 213 & n. 4, 450 F.2d 674 & n. 4.

10. 162 U.S.App.D.C. at 126, 498 F.2d at 77; *see* Robles v. EPA, *supra* note 7, 484 F.2d at 845; *cf.* Getman v. NLRB, *supra* note 7, at

214, 450 F.2d at 675 (Although the *Getman* court assumed *arguendo* that a "similar file" was involved, it noted that "the real thrust of Exemption (6) is to guard against unnecessary disclosure of files . . . which would contain 'intimate details' of a 'highly personal' nature."). *But cf.* Wine Hobby USA, Inc. v. IRS, *supra* note 7, 502 F.2d at 135 (reading "similar files" to include any file containing information of a personal quality and finding that the "term 'similar' was [not] intended to narrow the exemption from disclosure.").

11. 379 F.Supp. at 329.

12. The District Court made no reference to the possibility that the relevant "file" for purposes of the Act may be one limited to information showing the name, address, and flight number of the travelers returning to the United States from the Transpacific area during the four-month period, May 1–Sept. 1, 1973. It is doubtful that such a limited file can fairly be deemed one having the quality of intimate or highly personal details. *See* notes 14–15 and text thereto. One can speculate instances in

A related question is whether any potential privacy infringement, no matter how slight or speculative, serves to trigger the exemption absent a counterbalancing public interest in disclosure or whether a threatened exposure of intimate or embarrassing personal details is necessary as a threshold matter before the court proceeds to a balancing of private and public interests. The *Rural Housing* court indicated that the exemption was directed at "intimate details" such as "marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, reputation, and so on." [13] However, our *Getman* decision engaged in a balancing of interests even though the disclosure of names and addresses of certain union members in that case was deemed not "embarrassing" and threatened privacy only "to a very minimal degree." [14] The invasion of privacy in this case is roughly similar to that in *Getman*—names and addresses are sought along with information that the individual returned to the United States from Asia or Australia by air sometime between May 1 and September 1, 1973.[15] Although a not clearly inconsequential loss of privacy would be occasioned here, disclosure would result in less than a substantial invasion of privacy.

Assuming *arguendo* that sufficient privacy concerns are implicated by appellant's disclosure requests to warrant a

---

which disclosure of such information might prove embarrassing—*e. g.*, to a traveler who for personal or commercial reasons has put forward a different account of his activities. There may likewise be occasions where a telecast of the crowd at a baseball game may show and embarrass the employee who sought and obtained time off for his grandmother's funeral. The issue is whether the nature of the file and of the privacy interest (in the linkage of name and home address to the "public" appearance of the traveler on the aircraft) is such as to render this a "similar file", with public disclosure constituting a "clearly unwarranted invasion of personal privacy."

13. 162 U.S.App.D.C. at 126, 498 F.2d at 77.

14. 146 U.S.App.D.C. at 214, 450 F.2d at 675. *Rural Housing* indicates that intimate or highly personal details must be involved in order to satisfy the "similar files" predicate to the balancing test required to ascertain whether disclosure would result in a "clearly unwarranted invasion of personal privacy." *Getman* appears to have engaged in a balancing in a case involving a relatively minor loss of privacy only because it assumed *arguendo* that the "similar files" predicate was met.

15. In *Getman* the disclosure of names and addresses of union members was deemed a relatively minor loss of privacy. There the context of the disclosure of names and addresses also revealed the type of work the individual did, the person's employer, whether the person was a union member, and the union to which the individual belonged. Disclosure exposed those persons to a telephone request that they consent to a probing interview on union election procedures. Here the information—the

individual's name and address and the fact that he returned to the United States by air from Asia or Australia between May 1 and September 1, 1973—comprises at least no greater an invasion of privacy. The only consequence of the exposure here is a mailed notice informing the person that he is a member of a class and may be awarded damages for airline overcharges.

In Wine Hobby, Inc. v. IRS, 502 F.2d 133 (3d Cir. 1974), the Third Circuit found that disclosure of names and addresses of heads of families who produce "for family use and not for sale an amount of wine not exceeding 200 gallons per annum" would constitute an invasion of privacy. *Id.* at 134, 137. The court stated that the requested material not only revealed name and address information but also "family status of the registrant, including the fact that he is not living alone and that he exercises family control or responsibility in the household" and the fact that wine-making activities are being conducted within the home. *Id.* at 137. The court made no assessment of the seriousness of the privacy loss threatened by such disclosures other than observing that "the invasion of privacy in this case is not as serious as that considered by the court in other cases." *Id.*; see 16 *B. C. Ind. & Com. L.Rev.* 240, 251 (1975) (concluding that such disclosures "would result in only a minor invasion of personal privacy"). No assessment was required because the requesting party "advanced no direct or indirect public interest purpose in disclosure of these lists" and the court itself could "conceive of none." 502 F.2d at 137. Given the absence of any perceived public interest in disclosure, the court concluded that the invasion of privacy would be "clearly unwarranted." *See* note 25 *infra*.

balancing of competing interests, we are required to ascertain exactly what privacy loss and public interest are to be balanced. In *Getman* and *Rural Housing,* this court has weighed the privacy loss from disclosure to the requesting party against "the public interest purpose *of those seeking disclosure,* and whether other sources of information might suffice." [16] This formulation appears to assume, as *Getman* stated in footnote, that exemption (6) contemplates "an implicit limitation that the information, once disclosed, be used only by the requesting party and for the public interest purpose upon which the balancing was based." [17] Under such an assumption the privacy loss would be narrowed by the nature of the requesting party and its proposed use of the information and the public interest factor would be limited to the purposes served by that use. We believe that there is a substantial question whether Congress contemplated this limited balancing approach or whether the court has any independent equity authority to fashion a restrictive disclosure order. [18] We cannot blink the wording of the central provision, 5 U.S.C. § 552, stating that "[e]ach agency shall make available *to the public* information" set forth in subsection (a), if the exemptions listed in subsection (b) are inapplicable. And the critical Senate Report states that application of the exemption "will involve a balancing of interests between the protection of an individual's private affairs from unnecessary *public* scrutiny, and the preservation of the *public's* right to governmental information." [19] That a balancing is envisioned is plain. [20] What is unclear is whether the balancing is to be performed in the context of unrestricted disclosure to the public or of a use-specified release confined to the requesting parties. [21]

---

**16.** *See* Rural Housing Alliance v. Dept. of Agriculture, *supra* note 7, at 126, 498 F.2d at 77; Getman v. NLRB, *supra* note 7, at 214, 450 F.2d at 675 (emphasis added).

**17.** *See* 146 U.S.App.D.C. at 216 n. 24, 450 F.2d at 677 n. 24.

**18.** We have held that the courts do not "have equitable discretion to permit withholding of information which does not fall within one of the specific exemptions to the Act." Getman v. NLRB, *supra* note 7, at 216, 450 F.2d at 677. *Accord* Robles v. EPA, *supra* note 7, 484 F.2d at 847; Soucie v. David, 145 U.S.App.D.C. 144, 154, 448 F.2d 1067, 1077 (1971); Wellford v. Hardin, 444 F.2d 21, 24–25 (4th Cir. 1971). *But see* Consumers Union v. Veterans Administration, 301 F.Supp. 796 (S.D.N.Y.1969), *appeal dismissed as moot,* 436 F.2d 1363 (2d Cir. 1971). K. Davis, Administrative Law Treatise § 3A.6 at 123–24 (1970 Supp.); *cf.* GSA v. Benson, 415 F.2d 878, 880 (9th Cir. 1969). Therefore, unless the (b)(6) exemption itself intended to modify the "any person" language of § 552(a)(3) and to permit restriction of disclosure to the requesting party and his proposed use, the court would appear to be without authority to impose such limitations through an exercise of equitable discretion.

**19.** S.Rep.No.813, 89th Cong., 1st Sess. 9 (1967) (emphasis added). The phrasing of the House Report suggests that the "clearly unwarranted invasion of personal privacy" limitation reflects a balance struck by Congress between privacy and public interests. *See* H.Rep.No. 1497, 89th Cong., 2d Sess. 11 (1967) ("The limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information by excluding those kind of files the disclosure of which might harm the individual.") The House Report may be read as indicating that the courts are only to assess the degree of the privacy invasion and are not to engage in their own case by case balancing of the private and public interests. *See* Note, *Invasion of Privacy and the Freedom of Information Act*: Getman v. NLRB, 40 Geo.Wash.L.Rev. 527, 535–36 & nn. 48–49 (1972). However, courts and commentators have concluded that the Senate Report "is to be preferred over the House report as a reliable indicator of legislative intent because the House report was not published until after the Senate had already passed its bill." *See* Getman v. NLRB, *supra* note 7, at 212 n. 8, 450 F.2d at 673 n. 8 and sources cited thereat.

**20.** *But see* Note, *Supra* note 19, at 534.

**21.** *Getman* argues that, "[s]ince Exemption (6) necessarily requires the court to balance a public interest purpose for disclosure of personal information against the potential invasion of individual privacy," the exemption must intend to restrict disclosure to the requesting party and the proposed use. 146 U.S. App.D.C. at 216 n. 24, 450 F.2d at 677 n. 24. However, the passage from the Senate Report relied upon in *Getman* refers to protection against "public scrutiny" and to "the public's

Further questions are raised in this case regarding the weight of privacy interests threatened by and the public interests served by disclosure. It is unclear what effect the absence of a governmental assurance of confidentiality to the travelers completing the customs forms and the Bureau of Customs' apparent assertion of authority to make discretionary disclosure of the information have on the evaluation of the threat to privacy. Both of these factors would seem to undercut the privacy expectations protected by exemption 6.[22]

As to the second half of the balancing test, the Government contends that the public interest promoted by disclosure must relate to "the basic concern of the Act . . . to make available the legitimate information that an informed electorate needs to properly monitor the activities of the federal government." The Secretary contends that appellant's asserted interest in facilitating a private action to enforce the antitrust laws falls outside the public interest purpose of the FOIA since it does not involve an evaluation of governmental performance.[23] While we are doubtful that the public interest considerations can be limited to those at the core of the Act, the Secretary's argument at least requires us to consider whether the more general public interest in disclosure asserted by appellant should be given less weight than an interest in obtaining information material for monitoring the Government's activities.[24] Moreover, even if we were to accept the Government's argument, appellant's antitrust action might well be viewed as involving an indirect criticism of the performance of the CAB in protecting the public against anticompetitive activities of regulated air carriers.[25]

■ A final aspect of the balancing approach contained in *Getman* and *Rural Housing* is whether "other sources of information might suffice." [26] The District Court erroneously stated that "[p]laintiff

22. *See* Robles v. EPA, *supra* note 7, 484 F.2d at 846 (noting that a promise of confidentiality is "a factor to be considered" and finding "important" the "fact that the information" requested had been readily made available upon request).

23. Brief for Appellee at 26–29.

24. This core purpose is reflected in the legislative history to the 1974 amendments to the FOIA, referring to the 1966 Act as a "milestone law [which] guarantees the right of persons to know about the business of their government" and noting that the amendments are designed "to reach the goal of more efficient, prompt, and full disclosure of information." *See* H.Rep.No.876, 93d Cong., 2d Sess. 4–5, U.S.Code Cong. & Admin.News, p. 6271 (1974).

25. This case is clearly distinguishable from *Wine Hobby* where the only interest in disclosure asserted by the requesting party was stipulated to be private commercial exploitation and no direct or indirect public interest purpose was advanced by the requesting party or discerned by the court. 502 F.2d at 137.

26. *See* 162 U.S.App.D.C. at 126–27, 498 F.2d at 77–78; 146 U.S.App.D.C. at 214, 215–16, 450 F.2d at 675, 676–77.

right to governmental information" rather than to the privacy risk from disclosure to a particular requesting party or the specific public interest served by that party's proposed use of the material. A general balancing of the privacy loss from release to the public and the public interest in disclosure to the public would carry out the discernable intent of the Senate Report without conflicting with the Act's broad purpose to enable "any person" to request disclosure without making a showing that he was "properly and directly concerned with the information. *See* H.Rep.No.1497, *supra* note 19, at 1, 6, 8; S.Rep.No.813, *supra* note 19, at 5; Robles v. EPA, *supra* note 7, 484 F.2d at 847 & n. 6 *quoting* K. Davis, *supra* note 19, at 120–21; Sterling Drug, Inc. v. FTC, 146 U.S.App.D.C. 237, 243–44 n. 4, 450 F.2d 698, 704–05 n. 4 (1971) (noting that the "any person" language of the Act precluded an examination of "the applicant's need" for the information). While the selectivity provided by the *Getman* approach might be desirable from a policy standpoint as allowing a more refined harmonizing of privacy and disclosure interests, it is questionable whether Congress intended to create such a broad exception to the "any person" provision by adopting the "clearly unwarranted" language of exemption 6. The interest in disclosure to the public may be characterized by showing the uses contemplated by some members of the public specifically, but not exclusively, the plaintiffs.

recognizes the availability of other sufficient sources of information." The court's discussion indicates that only "*some* of the information" is available from passenger lists, reservation records, and credit card records retained by the airlines.[27] It is clear, however, that name and address information is available from nongovernmental sources only for those passengers whose tickets were mailed to them by the airlines or who paid for their flights by credit card.[28] In these circumstances, discovery from the defendants in the antitrust action would not "suffice" to meet appellant's potential need for a complete list of names and addresses of class members.

■ However, although there is no other sufficient source of information, there appears to be an alternative to the use of the FOIA to obtain the data.[29] Instead of bringing this FOIA action, appellant could have subpoenaed the customs forms from the Bureau under Rule 45(b), Fed.R.Civ.P. The discovery motion might well have prompted the same objections that the Secretary has pressed in resisting the FOIA request. If disclosure under the FOIA can be restricted to the requesting party and his proposed use, there would not be a significant difference between the two methods of securing the information. On the other hand, if an FOIA action results in disclosure to the public at large, the discovery approach would avoid unnecessary infringement of privacy interests by confining disclosure to sue by the parties in the antitrust litigation. The existence of the discovery alternative raises a question as to whether resort to the FOIA is appropriate where the information is sought in connection with ongoing litigation.[30]

In view of the peculiar circumstances of the present appeal, we do not believe

that it is either a necessary or an appropriate allocation of judicial resources to resolve these difficult questions at this time. Appellant does not even desire disclosure of the requested information unless his antitrust action is determined to be maintainable as a class action. It is quite possible that the antitrust action will never reach that stage and thus that resolution of the FOIA claim will have no impact on the parties to this appeal, the parties to the antitrust action, or the individuals who completed the requested customs forms. The antitrust complaint was filed on May 22, 1973, and dismissed by the District Court pursuant to the defendants' motion on August 7, 1973. This court vacated the District Court's judgment on October 30, 1974, and remanded the case with "instructions to retain jurisdiction while directing the parties to take appropriate action before the Civil Aeronautics Board." The court directed this course because of its view that "the first critical, and perhaps dispositive issue in the case is: What fares over the Pacific, those ceasing 31 March 1973 or those to be effective through 30 April 1973, if any, were in effect during May 1973?" and that "this is an issue which should be decided in the first instance by the Civil Aeronautics Board." After the CAB issued a declaratory order stating that the April 1973 rates were in effect through late July 1973, the District Court granted summary judgment to the defendants.

We conclude that appellant's challenge to the District Court's dismissal of his FOIA action is sufficiently substantial to warrant an order requiring the Secretary of the Treasury to preserve the requested customs forms to avoid mooting the case. Should this court find that the trial judge erred in granting summary judgment in the antitrust action and

---

27. 379 F.Supp. at 331. (emphasis added.)

28. Brief for Appellee at 30.

29. Both *Getman* and *Rural Housing* focused on the availability of nongovernmental sources of the requested information rather than other

means of obtaining the data from the agency. *See* note 25, *supra.*

30. *Cf.* Kerr v. United States District Court, 511 F.2d 192, 197–98 (9th Cir. 1975); Secretary of Labor v. Farino, 490 F.2d 885, 893 (7th Cir. 1973).

should the District Court certify that the antitrust suit is properly maintainable as a class action, appellant may reactivate this FOIA appeal. We defer the merits of the appeal pending such future developments and order that appellee take appropriate steps to preserve the requested information pending resolution of this appeal.[31]

*So ordered.*

Circuit Judge ROBB would affirm the judgment of the District Court, without more.

---

31. This preservation order simply implements appellee's undertaking to "preserve the customs declarations involved in this suit . . pending resolution of this case." *See* Letter from Arnold T. Aikens to Raymond T. Bonner, Oct. 9, 1974. There may be a limited housekeeping burden on the Government pendente lite, but this is not commensurate with the harm of a disclosure violating a statutory provision.