SERBIAN EASTERN ORTHODOX DIO-
CESE FOR the UNITED STATES OF
AMERICA AND CANADA et al., Plain-
tiffs,

v.

CENTRAL INTELLIGENCE AGENCY
et al., Defendants.

Civ. A. No. 77–1412.

United States District Court,
District of Columbia,
Civil Division.

Oct. 20, 1978.

Benjamin B. Brown and Donald E. Sinrod, Rockville, Md., for plaintiffs.

William H. Briggs, Jr., Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This Freedom of Information Act [FOIA] matter is before the Court upon the parties' cross motions for summary judgment. In 1975, plaintiffs requested that defendant Central Intelligence Agency [CIA] furnish documents "pertaining to the investigation not only locally, but nationally, of the controversy in the Serbian Orthodox Church, and more particularly any interference or infiltration of the Yugoslav Government or any of its authorities and agents and their relationship and activities *vis a vis* [plaintiffs]."

After an initial release of 22 documents, defendants conducted further searches and discovered numerous additional documents responsive to plaintiffs' request. Fifteen of these documents were released in their entirety. Of those remaining in dispute, 53 were released with deletions and 10 were withheld *in toto*; 237 documents were referred to agencies wherein they originated for a releasability determination.

In our Memorandum Opinion of July 13, 1978, we granted defendants' motion for summary judgment with respect to 22 of the disputed documents, fifteen of which had been previously released *in toto* and seven of which were protected from disclosure by exemption 3, 5 U.S.C. § 552(b)(3) and exemption 1, 5 U.S.C. § 552(b)(1).

After considering defendants' *Vaughn* itemization of the remaining 63 documents in dispute, we concluded that a determination that these withholdings were justified by exemptions 1, 3 and 6, 5 U.S.C. § 552(b) could not be made by reliance *solely* upon defendants' affidavit and itemization as then submitted. With respect to documents withheld under exemption 1, we stated that we were unable to evaluate the justifications advanced by the defendants without more specificity with regard to the "dates of classification, the number of any classifying officer or the portions appropriately classified." *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. C.I.A.,* No. 77–1412 at 9 (D.D.C. July 13, 1978). With respect to exemption 3, we noted that defendants had provided only conclusory justifications for withholding documents. With respect to exemption 6, we noted that defendants' affidavit presented no basis for balancing the competing considerations in an effort to determine whether disclosure constituted a "clearly unwarranted invasion of privacy." *See Department of Air Force v. Rose,* 425 U.S. 352, 373, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Accordingly, in our Memorandum Opinion of July 13, 1978, we directed defendants to submit a more detailed *Vaughn v. Rosen* affidavit.

On August 24, 1978, defendants, pursuant to our directive, supplemented their *Vaughn* affidavit with an extensive supplementary document index and affidavit (Supplemental Owen Affidavit). In addition, defendants filed copies of those documents remaining in dispute that had been partially released to the plaintiffs.

Plaintiffs' position may be briefly summarized. Plaintiffs oppose the defendants' motion for summary judgment on the principal ground that defendants' *Vaughn* itemization is "non-specific, not properly indexed and vague." Plaintiffs also complain that when multiple exemptions are claimed for the same material, the Court is unable to determine which exemptions to apply to specific portions of these documents or whether non-exempt information may be segregable from these documents. Finally, plaintiffs assert that "When an agency cannot go beyond generalities in its affidavit for fear of revealing too much, *de novo* review requires the court to employ additional techniques such as *in camera* inspection." The plaintiffs accordingly request that they be given summary judgment or that the Court undertake an *in camera* review of the disputed documents.

We first address the plaintiffs' suggestion that *de novo* review of these documents require that this Court employ "additional techniques, such as *in camera* inspection." We begin by noting that FOIA decisions involving national security issues have received special attention because of the problems encountered by trial courts, very mindful of their limitations in being able properly to assess matters bearing on national security and being aware of the damaging consequences that may arise from the disclosure of sensitive documents. Recently, however, the District of Columbia Court of Appeals has attempted to clarify the approach to be used while conducting *de novo* review in the national security context. *Ray v. Turner* (1978), 190 U.S.App. D.C. ——, 587 F.2d 1187. The Court of Appeals there set forth the following principles as the "salient characteristics" of *de novo* review in FOIA actions raising nation-

al security issues. These principles serve as guidelines in determining the propriety of *in camera* inspection in the instant case. The Court summarized these "salient characteristics" in the following language:

(1) The government has the burden of establishing an exemption. (2) The court must make a de novo determination. (3) In doing this, it must first "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record."[1] (4) Whether and how to conduct an *in camera* examination of the documents rests in the sound discretion of the court, in national security cases as in all other cases.[2]

It is clearly established that *in camera* inspection is not automatic. Nevertheless, to rule for the Government without *in camera* inspection, the Court must be convinced that the affidavit is sufficiently detailed to indicate that classifications assigned to the documents are reasonable and proper and that the documents logically fall into the categories provided by the asserted exemptions. *See Ray v. Turner, supra,* at ——, n.21, 587 F.2d at 1194, n.21; *Weissman v. CIA,* 184 U.S.App.D.C. 117, 122, 565 F.2d 692, 697 (1977). It is necessary to determine, therefore, whether the affidavits and indices submitted by the defendants in this case, coupled with the documents released in part to the plaintiffs, provide this Court with the information required to make a *de novo* determination. *See Ray v. Turner, supra,* at ——, 587 F.2d at 1195. In addressing this issue, it is necessary to examine the disputed documents in light of the qualifying criteria for documents withheld pursuant to exemptions 1, 3, and 6.

*Exemption 1:* Materials "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order."

■ In withholding documents under exemption 1, an agency need show only that proper classification procedures were followed and that by its sufficient description the document logically falls into the category of the exemption indicated. *Weissman v. CIA, supra,* 184 U.S.App.D.C. at 122, 565 F.2d at 697. The key requirement is that these documents be sufficiently described. *See Ray v. Turner, supra,* at ——, n.22, 587 F.2d at 1195, n.22.

■ Defendants rely upon the protection of exemption 1 for portions of thirteen documents. In several instances, defendants declassified documents to make their release possible, segregating and deleting those portions that created the original need to classify the document. The supplemental and original Owen affidavits, coupled with the supplementary index, clearly set forth the procedures used in classifying and declassifying the various documents. Furthermore, the supplementary index explicitly details the substance of the information giving rise to "secret" classification in terms sufficiently specific to determine that such information logically falls within the "secret" classification alleged, yet in terms sufficiently general to avoid revealing the actual content of the information. We are satisfied that the defendants have met their burden of demonstrating that the information withheld pursuant to exemption 1 is properly subject to that exemption's protection.

*Exemption 3:* Materials "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."

Defendants rely upon two "exempting statutes" as authority for withholding in-

---

1. S.Rep.No.93–1200, 93d Cong., 2d Sess. 12 (1974).

2. *Ray v. Turner, supra,* at ——, 587 F.2d at 1194. The Court further noted that while the foregoing considerations were developed for exemption 1, they apply equally to exemption 3 when the statute exempting disclosure of the material concerns national security interests. *Ray v. Turner, supra,* at ——, 587 F.2d at 1195.

formation revealing intelligence sources and methods:

Section 102(d)(3) of the National Security Act of 1947, which states in relevant part ". . . that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403(d)(3).

Section 6 of the Central Intelligence Agency Act of 1949, which states in relevant part ". . . the Agency shall be exempted from the provisions of (any laws) which require the publication or disclosure of the organization . . . names, [or] official titles, . . . of personnel employed by the Agency." 50 U.S.C. § 403g.

We have previously ruled that these statutes are exempting statutes. *See Serbian Eastern Orthodox Diocese for the United States of America and Canada v. CIA, supra*, at 5. The only remaining question presented is whether the withheld information falls within the categories expressly protected by the statutes. *Id.; see Baker v. CIA*, 188 U.S.App.D.C. 401 at 405, 580 F.2d 664 at 668 (1978); *Fonda v. CIA*, 434 F.Supp. 498, 504 (D.D.C.1977).

 Defendants rely upon exemption 3 to justify withholdings *in toto* and in part from 54 documents. Plaintiffs contend that defendants' justifications for these withholdings are too conclusory to determine whether the information withheld reveals intelligence sources and methods and other statutorily exempted information. It is true, and we have previously held, that a boilerplate claim that information discloses sources and methods is insufficient to sustain a defendant's burden to show that information is exempt. In the instant case, however, defendants have not only supplied this Court with detailed information surrounding each exemption 3 claim, but they have furnished the Court with the documents that were partially released. Although names and occasional portions are deleted from these documents, the content and propriety of these deletions is readily apparent when juxtaposed against the content of the information released. Only in those instances in which documents were withheld *in toto* is the content of the withheld information less apparent. Yet defendants in those instances have taken extra precautions to sufficiently describe in detail the material withheld and additionally to describe precise reasons that *in toto* rather than partial withholding of the documents was necessary.[3] We conclude, therefore, that the supplemental affidavit and supplementary document index sufficiently describe the withheld information for this Court to determine exemption 3 applicability. According substantial weight to defendants' two affidavits and extensive indices, we further conclude that the information withheld falls within the statutory protection of 50 U.S.C. § 403(d)(3) and 50 U.S.C. § 403g.

*Exemption 6*: "Personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy."

 In considering defendants' claims under exemption 6, we follow the procedure articulated by our Court of Appeals. *See*

---

**3.** Characteristic examples of these descriptions are found in the *Vaughn* itemization of documents 62 and 63, each of which consists of a single page and was withheld *in toto*:

Document No. 62 . . . The kind of knowledge demonstrated in the document could be known to but a few persons, one of whom would logically be the intelligence source or his informant. To prevent the identification and disclosure of the intelligence source involved, the document was withheld in its entirety since the deletion of those portions which would expose the source, would not leave an intelligible remnant.

Document No. 63 . . . The details of [this] report are *primarily concerned with a discussion of the intelligence source. He is named and also discussed in enough detail so that his identity would be apparent to a knowledgeable reader, even without the name. The remainder of the document discusses the manner in which the source obtained the information. There are no meaningful or intelligible portions of the document that could be released without posing a threat to the anonymity* (sic) of the intelligence source.

*Ditlow v. Shultz,* 170 U.S.App.D.C. 352, 517 F.2d 166 (1975). We must first determine whether release of information would constitute an invasion of privacy; secondly, whether the balance of interests favors the withholding of documents; and finally, whether alternative methods for obtaining the requested information is available. *Id.; see Serbian Eastern Orthodox Diocese for the United States of America and Canada v. C. I. A., supra,* at 6. In demonstrating that exemption 6 protects the withheld information from disclosure, defendants have a heavy burden to establish that the disclosure of the information will result in a "clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6); *see Department of Air Force v. Rose, supra,* 425 U.S. at 378, n.16, 96 S.Ct. 1592. It is incumbent upon the defendants to present to this Court sufficiently detailed information that we may balance the identified individual's right to privacy against the public's right to the information, excluding information the disclosure of which would prove harmful. *Department of the Air Force v. Rose, supra,* at 372, 96 S.Ct. 1592. Furthermore, we have noted that public embarrassment resulting from an individual's identification in CIA files is not a sufficient harm to warrant automatic protection of exemption 6. *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. C. I. A., supra,* at 6.

■ In our analysis of the application of exemption 6, we disagree with plaintiffs' characterization of defendants' *Vaughn* itemization as conclusory and vague. Plaintiffs, for example, characterize defendants' itemization of Document No. 8 as "one of the most egregious examples of disregard for the exemption's requirements" because it refers to information that "could" result in a clearly unwarranted invasion of privacy rather than establishing that such information "would" result in such an invasion. That itemization reads in part as follows:

> Document No. 8 . . . This document contains biographic information on a total of 66 people. . . . Only four of the individuals are officials of the Ser-

bian Church. . . . The information on the other individuals is thus not responsive to the FOIA request in the above-captioned litigation. An additional consideration arises because of the nature of many of the comments about the individuals. The material is sprinkled with commentary which is derogatory and potentially damaging. The remarks allege that some of the individuals were involved in criminal activities, including racketeering, bootlegging and extortion. Other remarks allege that some individuals were sponsors of Nazi-backed organizations, or that individuals were related to Nazi leaders, or that some individuals were "Quislings" in their homeland.

In accepting defendants' description of Document 8, we agree that the information withheld is indeed damaging to the individuals involved and that its disclosure would constitute a clearly unwarranted invasion of privacy when balanced with public interest in the release of such information.

Contrary to plaintiffs' contention, the specificity with which defendants described Document No. 8 pervades the itemization of every document for which exemption 6 is claimed. Upon careful consideration of each of these itemizations, we conclude that defendants have clearly established that harm would result from the release of these documents and that the public interest in their release fails to tip the balance in plaintiffs' favor. Having found it unnecessary to look beyond defendants' affidavits, indices, and documents released with deletions, we find it unnecessary to conduct an *in camera* inspection, and conclude that exemption 6 was properly claimed by defendants for the fifteen documents for which that exemption was asserted.

■ Finally, we reject the plaintiffs' argument that by claiming more than one exemption for a single document, defendants preclude this Court from determining the applicability of various exemptions to segregable portions of these documents. Defendants specifically and clearly state in the supplemental Owen affidavit and supplementary document index the extent to

which materials withheld are covered by either exemption 1, 3, 6, or combinations thereof. Defendants' affidavits thus differ from those presented to the Court of Appeals for the District of Columbia in *Ray v. Turner* (1978), 190 U.S.App.D.C. —— at ——, 587 F.2d 1187 at 1196. In *Ray* the affidavit, while purporting to link specific exemptions to specific documents, suffered the defect of lumping exemptions together without identifying the particular information to which the exemption purported to apply. *Id.* at ——, 587 F.2d at 1196.[4] By contrast, in the instant case the supplemental Owen affidavit and supplementary document index combine exemptions only when more than one exemption applies equally to the same information withheld.

### Conclusion

The defendants have supplied plaintiffs with 53 documents with certain portions deleted. These documents consist of approximately 247 pages (a few pages being completely blank). They have withheld 10 documents *in toto* totalling 24 pages. We have examined each of the 53 documents released and have considered the propriety of the deletions in the context of the documents themselves and in the light of the detailed explanations provided in the supplemental affidavit and supplementary document index. We have also considered the explanation for the total withholding of 10 documents. We are satisfied that defendants have met their burden and that they are entitled to judgment.

---

**4.** An example of the defective affidavit in *Ray* appears as follows:

> Document 2:
> This document has been denied in its entirety, primarily to protect intelligence sources and methods since the release of any meaningful portion would disclose the identity of the source, and further, to protect cryptonyms, names of CIA personnel and CIA organizational data. Thus exemptions (b)(1), (b)(3) and (b)(6) apply.

By contrast, the most avidly disputed description set forth in defendants' supplementary index, for which multiple exemptions are claimed reads in part as follows:

> Document Number 54:
> *Supplementary Comment:* This document is an intelligence report originated in a CIA station in an identified foreign country in October 1969. The information identifying

the CIA station abroad was deleted to avoid official U. S. government acknowledgement of the existence of the station: an action which could have serious foreign affair consequences. The information was deleted as information which was classified and which discloses something of CIA operational methods. The deletions were thus made pursuant to FOIA exemptions (b)(1) and (b)(3); see paragraphs 4, 5, 10, and 12 of Owen affidavit. Paragraphs 4 and 5 of the Owen affidavit explain the precise procedure for classifying the foregoing information pursuant to Executive Order 11652. Paragraph 10 describes reasons for withholding information which reveals the existence of a CIA station abroad. Paragraph 12 of the affidavit describes information withheld under the authority of exemption (b)(3) to the extent that such information reveals intelligence sources and methods.