JUDICIARY COMMITTEE OF THE GENERAL ASSEMBLY *v.* FREEDOM OF INFORMATION COMMISSION

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 243634
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed October 31, 1983

*Joseph I. Lieberman,* attorney general, and *Paul M. Shapiro,* assistant attorney general, for the plaintiff.

*Mitchell W. Pearlman,* general counsel, for the defendant.

HURLEY, J. In this matter the judiciary committee (committee) is appealing from a decision of the freedom of information commission (FOIC). The appeal is brought under the provisions of General Statutes § 4-183, which is applicable to FOIC appeals. General Statutes § 1-21i (d).

The complainants, Andrew J. Melechinsky and Ralph J. Lombardi, constitute an organization known as "Constitutional Revival." These individuals sent a letter to the FOIC requesting information held by the judiciary committee. Specifically, they wanted to look at the information contained within the committee's files of all judges to be reappointed and judicial nominees. They made particular reference to the questionnaires filled out by judicial candidates for reappointment as judges of the Superior Court. The hearing was held in November, 1979, before FOIC hearing officer Helen M. Loy.

At the hearing they further limited their request to the answers filed by three judges to six of the questions:

1. The nominee's marital status;

2. The nature and disposition of any complaints filed against the nominee with a grievance committee;

3. The details of any reprimands given to the nominee by any court, judge or grievance committee;

4. The details of any claims or suits for malpractice against the nominee;

5. The nominee's years of military service, rank, duties, type of discharge or disability rating, if any;

6. The nominee's present physical condition.

In their letter to the FOIC dated March 16, 1978, the complainants set forth the purpose of their request: "We want to know this information because our experience indicates that most or all of the judges in the system are incompetent."

The court has no background on Lombardi's experience with the courts. Melechinsky, however, put into evidence before the FOIC verbal and documentary evidence of his experience with the courts. The documentary evidence consisted of newspaper articles describing his battles with the courts, including information that he had been arrested twenty times and jailed fifteen times, had been charged with practicing law without a license, with having counterfeit marker plates, with the crimes of criminal trespass and of resisting arrest, and with contempt of court. He told the FOIC that 90 percent of this state's laws are unconstitutional and described himself as "an unlicensed constitutional lawyer." He also filed various lawsuits, including one against the jury that found him guilty of criminal trespass, another against various judges and another against the entire court system in the state. None of his suits was successful, according to the articles he submitted as exhibits. He appeared at the hearing before the FOIC both as a witness and as his own attorney. Lombardi also testified.

The only other witness to testify was State Representative Ernest N. Abate, who was at the time Speaker of the House and who had previously been chairman of the judiciary committee.

In essence, the testimony of Melechinsky and Lombardi consisted of a history of their efforts to obtain information from the committee about the backgrounds of judicial candidates and of general statements of a derogatory nature about the judiciary. They also made

various comments as to the present methods of appointing judges and suggested alternatives to the system presently in effect.

Abate described the questionnaire answered by the judges at the request of his committee. He indicated that he did not consider the answers to the questions which were related to medical information, appearances before grievance committees of the bar association, personal matters such as marital status, and other personal information of a sensitive nature, to be in the public domain. This information was gathered for the committee only and not available to the public.

Abate also stated that complaints against judges were investigated by the committee. The blank questionnaire was then put into evidence so that the specific questions asked would be known to the complainants and to the FOIC hearing officer.

Regarding certain questions, Abate explained why the committee would not reveal them to the public. He stated that questions regarding marital status were personal and not to be disclosed because a nominee might be in the course of a dissolution action, or something of that sort, information the committee considered very personal to a nominee. The committee regarded matters relating to reprimands by a court, or appearances before a grievance committee as protected information, as set forth in state statutes and the rules of court. Malpractice claims are information the committee considers personal and, claimed Abate, should not be disclosed to the public. The type of discharge from the military, disability ratings, possibly a bad conduct or undesirable discharge are all personal information and should not be made known to the public. Present physical condition in some cases is very personal information, as well as medical information, and should not be

disclosed. Complaints to the judicial review council are not disclosed to the public because such complaints are by statute not public information.

Abate then delineated the differences between the committee's need to have this information to help determine the candidate's qualifications for judicial office and the need of the public to have it. He pointed out that in cases of medical problems, for example, the details could be embarrassing to the judicial candidate, if revealed to the public at large.

The statutory basis for Abate's testimony and for the position taken by the committee is General Statutes § 1-19 (b) (2), which exempts from disclosure "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy."

Section 32 of the Practice Book provides that the records and transcripts of the local, or the statewide, grievance committees are available only to those committees and not to any other person except by order of the court. Thus questions two and three of the six questions are barred from disclosure to the public by § 32 of the Practice Book.

General Statutes (Rev. to 1979) § 51-51*l* exempts the statewide judicial review council, which is responsible for the disciplining of judges, from the Freedom of Information Act. "The records of the [judicial review] council shall not be public records for the purposes of sections 1-19 and 1-20." Thus question three which deals with the details of any reprimands given to the nominee by any court or judge would not be subject to disclosure under § 51-51*l*.

The hearing officer's report is dated February 7, 1980, and was approved by the FOIC on February 27, 1980.

The first issue then to be decided by the court is whether the FOIC decision should be reversed with respect to questions two and three dealing with complaints to any grievance committee, or with an action taken by a committee or a court.

General Statutes § 4-183 (g)[1] states in pertinent part that the court shall not substitute its judgment for that of the agency (FOIC) as to the weight of the evidence on questions of fact. The court may, however, reverse or modify a decision if it finds that the decision is: "(1) In violation of constitutional or statutory provisions . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The committee alleges that the FOIC abused its discretion in ignoring the policies behind the Freedom of Information Act. It also claims that Practice Book § 32 specifically bars the public from information possessed by any grievance committee. The hearing officer ignored Practice Book § 32, simply stating, in effect, that judges, as public officials, have no right to privacy in matters relating to the public's business. The court is not aware of any cases regarding the applicability of the Practice Book rule to the Freedom of Information Act. The court does find, however, that the FOIC did not consider this issue before rendering its deci-

[1] "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

sion. In its brief, the defendant cites no authority for making public the answers to questions two and three relating to grievance committee matters and fails to even refer to Practice Book § 32 and its conflict with the Freedom of Information Act. Instead, the defendant asserts that the records of the grievance committee are not in question, since the information to be disclosed is the response to the questionnaire regarding grievance matters. Such reasoning is not persuasive. The disclosure of the information regarding grievances is the issue. The issue is not what the source of that information is. Accordingly, the court finds that the decision of the FOIC was in violation of Practice Book § 32. It was also in violation of General Statutes § 51-51*l*. Therefore, the decision was erroneous, arbitrary and clearly unwarranted with respect to questions two and three.

With regard to all the questions, the FOIC found that the information was, in fact, "personnel or medical files and similar files" within the meaning of General Statutes § 1-19 (b) (2). In interpreting the act, the general rule is that disclosure and exceptions thereto are to be narrowly construed. *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 329, 435 A.2d 353 (1980). The burden of proving the applicability of an exemption rests on the agency claiming it. Id., 341.

The courts of this state require a balancing of the public's right to know with the private need for confidentiality when deciding if the release of the information becomes an invasion of personal privacy. *Wilson* v. *Freedom of Information Commission,* supra, 328–29; *Meriden Record Co.* v. *Browning,* 6 Conn. Cir. Ct. 633, 636, 294 A.2d 646 (1971).

In the *Wilson* case as in this case, the FOIC argued that the balancing test does not apply. The court held, on the contrary, that the balancing test is not only permissible, it is appropriate. The basis for the Supreme

Court's decision was its conclusion that the decision of the commission was affected by an "error of law," one of the grounds for reversal or modification enumerated in General Statutes § 4-183 (g). "Although factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law." *Wilson* v. *Freedom of Information Commission,* supra, 342–43.

In *State* v. *Januszewski,* 182 Conn. 142, 171, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), a criminal case, the court stated that through the Freedom of Information Act, the legislature has sought to balance the public's right to know and the private needs for confidentiality. The court must weigh the defendant's need to examine confidential matters (in this case a police officer's personnel file) for the purpose of discovering impeaching material, against the public policy in favor of the confidentiality of private and personal information.

The law requires a two-step analysis when an agency claims an exemption under § 1-19 (b) (2). Firstly, the information sought must qualify as a "personnel, medical or similar" file. Secondly, the release of such information must constitute an invasion of the subject's privacy. In this case the FOIC performed the first of the two steps in finding that the answers to the six questions did constitute "personnel, medical or similar" files in paragraph nine of the report of the hearing officer which was approved by the full commission.

The report is completely lacking, however, in any analysis of the second step, regarding the question of invasion of privacy. After finding that the information qualified under the statute as "personnel, medical or similar" files, the FOIC stated in paragraphs ten and

eleven that the sole question is whether the answers to the questions could constitute an invasion of privacy. In paragraph twelve it is stated that there is no evidence concerning the answers to the questions. The court does not find this paragraph to have any significance. But the following paragraph, paragraph thirteen, completely ignores the so called "sole issue" in the case, viz., the issue of invasion of privacy. Paragraph thirteen illogically concludes that judges "do not have a right to privacy with respect to matters which relate to the conduct of the public's business." Thus the FOIC completely ignored the issue of invasion of privacy. The FOIC also disregarded the extensive testimony of House Speaker Abate regarding the opinion of the committee on the invasion of privacy issue set forth earlier in this opinion. The court therefore finds that the FOIC failed to perform the second step of the required analysis. It did not consider the question of whether the answers to the questions constituted an invasion of privacy. Thus it failed to perform the balancing test as required by law. *Wilson* v. *Freedom of Information Commission,* supra, 342.

Therefore the court finds that the decision was erroneous, arbitrary and unwarranted with respect to all six of the questions.

Federal cases, cited by the plaintiff, are all in accordance with the *Wilson* case, supra, requiring a balancing of the individual's right to privacy and the public's right to know.

In *Department of Air Force* v. *Rose,* 425 U.S. 352, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976), the Supreme Court interpreted 5 U.S.C. 552 (b) (6), which is the federal counterpart of General Statutes § 1-19 (b) (2). The federal act, however, imposes a greater burden on the government when it seeks to prevent disclosure. It exempts: "personnel and medical files and similar files

the disclosure of which would constitute a *clearly unwarranted* invasion of personal privacy." (Emphasis added.)

In *Department of Air Force* v. *Rose,* supra, 373, Justice Brennan quoted the legislative history of the medical-personnel exemption in setting forth the balancing test: "Congress enunciated a single policy, to be enforced in both cases by the courts, 'that will involve a balancing' of the private and public interests."

Since the balancing test applies with the more stringent standards of the federal act, it stands to reason that a balancing test should apply under Connecticut's statute which places a lesser burden on the agency (committee) than does the federal act.

The factors to be considered were synthesized by the Tenth Circuit: "In applying the test, these factors are considered: 1. Would disclosure result in an invasion of privacy and, if so, how serious? 2. The extent or value of the public interest, purpose or object of the individuals seeking disclosure." *Campbell* v. *United States Civil Service Commission,* 539 F.2d 58, 61 (10th Cir. 1976).

In *Campbell,* the court sustained nondisclosure of specific government personnel records which would have demonstrated overclassification and improper promotion: "The disclosure of the personnel records in the instant case would be a serious invasion of privacy. Matters such as an individual's job classification, his salary and information as to overclassification are also personal and capable of causing embarrassment. . . . Also, the public interest in efficient and lawful personnel management by government agencies is better served by disclosure of general agency performance rather than by specific revelation

of individual problems such as overclassification. Practically no public interest is advanced by disclosure of the latter." Id., 62.

In *Rushford* v. *Civiletti,* 485 F. Sup. 477 (D.C. Cir. 1980), the court found that federal judges had some degree of privacy from the release of department of justice files. The action was brought under the Freedom of Information Act, 5 U.S.C. § 552, in which the plaintiff sought the release of files the department of justice maintains on allegations that federal judges may have engaged in criminal or other misconduct. The department claimed an exemption under exemption 6 and 7 (C) of the act, supra. The court stated that it must balance the public interest in disclosure against the personal interest in privacy of the affected person. "In performing this task, the court must consider not only the intended use of the information by the plaintiff but also its possible use by other members of the public. *Ditlan* v. *Schultz,* 170 U.S. App. D.C. 352, 357, 517 F.2d 166, 171 n.21 (D.C. Cir. 1975). It is with these principles in mind that the plaintiff's request must be considered." Id., 478.

The court went on to point out that publication of the fact that a federal judge had been the subject of a criminal investigation would clearly have a severe adverse impact both on his personal life and his official performance. "The Judiciary, more so than the other branches of government, relies for its effectiveness primarily on the reputation of its members. As has often been said, the courts lack both the power of the sword and the power of the purse. Unlike the Executive Branch, they do not exercise command over military and law enforcement personnel and, unlike the Congress, they have no authority to levy taxes or to appropriate money. In the final analysis, the Judiciary's authority and the general compliance with its decisions depends upon the integrity of the judges and the pub-

lic's perception of that integrity." Id., 479. "[T]he general purposes he (the plaintiff) asserts are outweighed by the very significant and tangible public interest in a Judiciary or an individual judge unsullied by the publication of false accusations, particularly under the Exemption 7(C) standard which accentuates privacy considerations." Id., 480.

In the present case the defendant has claimed that the FOIC be upheld because the hearing officer did not have before her the answers to the questions filed by the three judges in question. The same suggestion was made in *Rushford* v. *Civiletti,* supra. The court disposed of that issue by stating (pp. 480–81): "The development of a factual record is unnecessary and inappropriate when it may properly be determined that, for reasons applicable generally, and without regard to particular circumstances, the privacy interest sought to be protected outweighs the interest in revelation asserted by the particular plaintiff."

As a practical matter, the development of a factual record, i.e., disclosure of the answers to the questionnaires, would be impossible without the incidental disclosure of the very information sought to be protected. Id., 481.

In every reported case concerning the application of the federal Freedom of Information Act, a careful balance was struck between the individuals seeking disclosure and the agency's interest in preserving the privacy interest of the persons whose names and personnel or medical data appear in its files. In this case, the hearing officer gave no weight to the interest of the judges in the privacy of the information given to the committee. The hearing officer did not balance the privacy interest of the judges with the idiosyncratic

interest of the complainants. If she had followed the balancing test, the balance would have had to be struck on the side of the privacy interest of the judges.

A final consideration regarding the balancing test arises when the government agency whose records are being sought was given the information with an expectation of confidentiality. This is a factor to be considered in the balancing of interests. *Rural Housing Alliance* v. *U.S. Department of Agriculture,* 498 F.2d 73, 77–78 (D.C. Cir. 1974). When the judges returned the completed questionnaires to the judiciary committee, it was with the understanding that their answers were to be held in confidence and revealed to no one but members of the committee. This consideration, the expectation of privacy, was given no weight by the hearing officer or the FOIC.

For all of the foregoing reasons, the decision of the FOIC is reversed and the appeal is sustained.