NATIONAL ASSOCIATION OF RE-
TIRED FEDERAL EMPLOYEES,
Plaintiff,

v.

Constance HORNER,* Director, Office
of Personnel Management, Defendant.

Civ. A. No. 85–1739.

United States District Court,
District of Columbia.

April 28, 1986.

Joseph B. Scott, Kator, Scott & Heller, Washington, D.C., Amy E. Wind, for plaintiff.

---

* Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Constance Horner, Director of Office of Personnel Management, has been substituted for Loretta Cornelius, who is no longer Acting Director of that Office.

Fran L. Paver, Office of Information and Privacy, U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff, National Association of Retired Federal Employees ("NARFE"), a non-profit association which concerns itself with the administration of the federal government's civilian retirement systems as well as other issues affecting the aged and aging, brought this action under the Freedom of Information Act, 5 U.S.C. § 552, (FOIA), seeking the names and addresses of persons added to the annuity rolls between April 1, 1981 and December 31, 1984. Plaintiff seeks to use the names for the purpose of making a one-time written contract with recent annuitants in order to describe the association's goals and services and to solicit membership. Defendant, Office of Personnel Management ("OPM"), refused to provide the information on the grounds that disclosure would constitute a "clearly unwarranted invasion of personal privacy" within the meaning of 5 U.S.C. § 552(b)(6). Following an unsuccessful administrative appeal, plaintiff filed this action. For the reasons set forth below, the Court grants summary judgment in favor of plaintiff.

## I.

Between 1979 and 1981, OPM and its predecessor, the Civil Service Commission, assisted plaintiff in making blind mailings to persons recently joining the federal annuity rolls. As a result of these mailings, which described NARFE's purposes and solicited new members, plaintiff's membership doubled to approximately 487,500. In May 1982, OPM advised plaintiff that for policy reasons it was discontinuing its prior practice of providing the mailing labels, and invited plaintiff to submit a FOIA request for the information. That request was then denied on the ground that release of the names and addresses would constitute a clearly unwarranted invasion of the addressees' personal privacy. Plaintiff appealed this denial administratively, offering in its letter of appeal to forego receipt of the names and take only addresses in order to make a "Dear Annuitant" mailing. The appeal was subsequently denied.

Since it lost access to the names and addresses formerly provided by defendant, plaintiff has experienced a significant decrease in its rate of growth, increasing by only approximately 5,000 members. According to defendant, during the period in question more than 535,000 persons have been added to the annuity rolls. Plaintiff states that it will use the names and addresses for a one-time mailing only, and that it will make no follow-up contact of any kind unless the annuitants request further information. Plaintiff also points out that its by-laws prohibit it from selling or otherwise distributing lists and computer labels of prospective members.

Following denial of its administrative appeal, plaintiff filed this action and the cross-motions for summary judgment now before the Court followed. The sole question presented is whether defendant properly invoked FOIA's Exemption 6 in refusing to disclose the information requested.

## II.

As the Supreme Court has noted, FOIA embodies "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Department of Air Force v. Rose*, 425 U.S. 352, 357, 361, 96 S.Ct. 1592, 1597, 1599, 48 L.Ed.2d 11 (1976). Exemption 6 permits an agency to withhold personnel and medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). Congress' primary concern in drafting this exemption was to provide for the confidentiality of personal matters. *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 599–600, 102 S.Ct. 1957, 1960–61, 72 L.Ed.2d 358 (1980). The parties agree that the information sought here falls with-

in the catch-all phrase of "similar files." They differ only as to whether disclosure of the information would result in a clearly unwarranted invasion of personal privacy. In deciding that question, this Court must balance the public interest in disclosure of the information against the privacy interests of the annuitants, *see Department of the Air Force v. Rose*, 425 U.S. at 372, 96 S.Ct. at 1604, bearing in mind that the dominant objective of FOIA is to provide the fullest possible disclosure of agency records, *id.* at 361, 96 S.Ct. at 1599, and that Exemption 6's "clearly unwarranted" standard generally tips the balance of interests in favor of disclosure. *Washington Post Co. v. United States Dep't of Health*, 690 F.2d 252, 261 (D.C.Cir.1982); *Getman v. NLRB*, 450 F.2d 670, 674 n. 11 (D.C.Cir. 1971).

In justifying its refusal to release the information sought here, defendant claims that the federal annuitants in this case have "significant privacy interests in nondisclosure of their home addresses." Defendant's Motion for Summary Judgment at 9. In so arguing, defendant relies on a series of decisions in which other circuits have recognized a substantial privacy interest in home addresses. *See Heights Community Congress v. Veterans Administration*, 732 F.2d 526, 529 (6th Cir.1984) ("important privacy interest" in home addresses); *American Federation of Government Employees v. United States*, 712 F.2d 931, 932 (4th Cir.1983) (*per curiam* ) ("employees have strong privacy interest in their home addresses"); *Wine Hobby USA, Inc. v. IRS*, 502 F.2d 133, 136–37 (3d Cir.1974) (privacy of the home traditionally respected). Whatever the merits of these decisions, this Circuit has not seen fit to follow them. Indeed, the case law in this Circuit has identified only a slight privacy interest in such information. *Ditlow v. Shultz*, 517 F.2d 166, 170 (D.C. Cir.1975) (disclosure of names and addresses would result in less than substantial invasion of privacy); *Getman v. NLRB*, 450 F.2d at 674–75 (disclosure of names and addresses would result in relatively minor loss of privacy); *Disabled Officer's Ass'n v. Rumsfeld*, 428 F.Supp. 454, 458 (D.D.C.1977), *aff'd without opinion sub nom.*, *Disabled Officers Ass'n v. Brown*, 574 F.2d 636 (D.C.Cir.1978); *see also Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73, 77 (D.C.Cir.1974). As the Court of Appeals noted in *Getman*, the "real thrust of Exemption 6 is to guard against unnecessary disclosure of files ... which would contain 'intimate details' of a 'highly personal' nature." 450 F.2d at 675 (footnotes omitted). Disclosure of names and addresses, on the other hand, reveals nothing that would embarrass the addressee. *Id.*

■ Defendant attempts to buttress its claim of a substantial privacy interest by arguing that "many, if not most, of the annuitants would find [plaintiff's] membership solicitations" annoying or harassing. Defendant's Motion for Summary Judgment at 8. In *Disabled Officer's Ass'n*, however, the Court rejected precisely such an argument. There, the plaintiff sought the names and addresses of disabled, retired military officers in order to mail such persons brochures describing the association and to solicit new members. Such an infringement of the addressee's privacy, the Court concluded, while not inconsequential, was nevertheless minimal as it did not involve disclosure of any embarrassing or intimate information. 428 F.Supp. at 458. So also in *Getman*, the District of Columbia Circuit permitted disclosure of names and addresses of employees to a law professor who wished to contact the employees in order to conduct a study of union representation elections. In both cases, the addressees could have found contact with the plaintiffs annoying or bothersome; the courts, however, did not consider this possibility sufficiently important to warrant a finding that the privacy interests at stake were substantial. Moreover, under the statute, it is the very production of the documents which must constitute a clearly unwarranted invasion of privacy. *National Ass'n of Atomic Veterans v. Director, Defense Nuclear Agency*, 583 F.Supp. 1483, 1487–88 (D.D.C.1984). An

agency may not rely on "unsubstantiated speculation about possible secondary effects of disclosure" or "the mere potential for invasion of privacy" in justifying a refusal to disclose information based on Exemption 6. *Id. See also Department of Air Force v. Rose,* 425 U.S. at 380 n. 19, 96 S.Ct. at 1608 n. 19 (Exemption 6 directed at threats to privacy interests more palpable than mere possibilities); *Arieff v. Dep't of the Navy,* 712 F.2d 1462, 1468 (D.C.Cir. 1983) (production of documents, not secondary effects of release, must be the source of invasion of privacy). Indeed, in *Arieff,* the Court of Appeals noted that while the release of agency information might subject the agency head to irate telephone calls at his home, such a secondary effect is not the sort of invasion of privacy that can support an Exemption 6 claim. 712 F.2d at 1468.

Finally, there is at least some evidence which casts doubt on the validity of defendant's prediction that most annuitants would be annoyed by contact from plaintiff. The record indicates that approximately half of plaintiff's current membership, or some quarter of a million people, joined the association during the period it conducted blind mailings. While the Court does not know how many of these people joined because of the solicitation, or how many were contacted altogether, this considerable figure suggests that a substantial percentage of annuitants would welcome information about plaintiff and consider such information a personal benefit.

▮ Be that as it may, this circuit has recognized only a slight privacy interest in a person's name and address, and has discounted, if not ignored altogether, the possible secondary effects that the release of such information might have on the addressee. Unless the release of names and addresses, standing alone, will embarrass the individuals involved, this circuit has determined that the information is entitled to little protection.

Against the relatively minor privacy interest, then, the Court must weigh the public interest in disclosure. *Department of the Air Force v. Rose,* 425 U.S. at 372, 96 S.Ct. at 1604. While defendant suggests that the public interest must flow directly from the disclosure itself, and not from speculative secondary effects based on plaintiff's proposed use of the information, this again is not the law in this circuit. Indeed, in *Ditlow v. Shultz,* 517 F.2d at 171–72 n. 21, the Court of Appeals stated that the "interest in disclosure to the public may be characterized by showing the uses contemplated by some members of the public specifically, but not exclusively, the plaintiffs."

Plaintiff proposes to use the information to inform annuitants of the association's goals and services, and to solicit new members. As an organization, plaintiff lobbies on behalf of its members before the legislative and executive branches, informs members of their rights and entitlements, and keeps them abreast of changes in the law. The situation here, then, is directly analogous to that presented in *Disabled Officer's Ass'n.* There too, the plaintiff intended to use the information "to inform [retired disabled military officers] of its existence and purpose and to solicit their membership." 428 F.Supp. at 458. The plaintiff served the interests of the members by lobbying on their behalf, apprising them of government activities affecting them, and assisting members in pursuing benefits to which they might be entitled. *Id.* The Court found that these services, in and of themselves, along with the fact that many of the addressees might be desirous of joining the association, created a public interest in disclosure sufficient to overcome the relatively slight privacy interests involved.

Defendant attempts to distinguish *Disabled Officer's Ass'n* on the grounds that there the plaintiff's membership had declined substantially and the organization was in danger of dying by attrition, while NARFE currently numbers nearly half a million members and is still growing, albeit at a drastically reduced rate. The Court, however, does not view such a distinction as controlling. The public interest identi-

fied in *Disabled Officer's Ass'n* derived from the organization's services, not from its mere existence. It is unlikely that, had the organization's membership been stable rather than declining, the court would have refused disclosure on the grounds that the association was reaching enough people, or was already performing its services well enough. So too here, the public interest in disclosure flows from NARFE's services and the fact that many annuitants might be pleased to learn of them. If plaintiff's continued existence were in danger, that might strengthen its claim of a public interest in release of the addresses; the fact that its membership is relatively large, however, does not undermine its claim.

Finally, defendant argues that plaintiff could contact recent annuitants through less intrusive means, such as advertising. It is true that the availability of alternative sources of the information sought is a factor to be weighed in the balancing process. *Ditlow v. Shultz*, 517 F.2d at 172–73. Since plaintiff lost access to defendant's mailing lists, its membership has increased by only 4,000 at a time when some 535,000 new names were placed on the annuity rolls. While the record does not indicate precisely what alternative solicitation methods plaintiff has employed during this period, it is clear they have been largely unsuccessful. Defendant suggests advertising as an appropriate alternative, but as plaintiff's potential members are to be found in all 50 states, such a recruitment strategy is certain to be expensive. Moreover, the claim that an organization can advertise through the media could be made in every "names and addresses" case, and could have been raised in the *Disabled Officer's Ass'n* or *National Ass'n of Atomic Veterans* cases. Such a blanket claim does little to assist the Court in determining whether the public interest in disclosure outweighs the privacy interests at stake.

### Conclusion

In light of the general philosophy of disclosure that animates FOIA, and the high standard set out in Exemption 6 tilting the balance in favor of disclosure, this Court concludes that defendant improperly withheld the information sought by plaintiff in this case. Given the relatively minor invasion of privacy that will be occasioned by release of the names and addresses, and the public interest in disclosure, this Court finds that the information must be released. It is therefore, this 28th day of April, 1986

ORDERED that summary judgment be and it hereby is granted in favor of plaintiff and against defendant and that defendant be and it hereby is ordered to promptly release to plaintiff the names and addresses of all persons added to the federal annuity rolls between April 1, 1981 and December 31, 1984.

SO ORDERED.