841 F.2d 1459
 127 L.R.R.M. (BNA) 3072, 108 Lab.Cas. P 35,041
 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING INDUSTRY, LOCAL 598, and
Glenn E. Hickman, Plaintiffs-Appellants,
v.
DEPARTMENT OF the ARMY, CORPS OF ENGINEERS, WALLA WALLA
DISTRICT, Defendant-Appellee.
 No. 86-3586.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1986.
Decided March 15, 1988.
 
 Cheryl A. French, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for plaintiffs-appellants.
 Theresa J. Rambosek, legal intern, supervised by Carroll D. Gray, Spokane, Wash., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before SKOPIL, FLETCHER and POOLE, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 This is an appeal of the district court's denial of attorney's fees under the Freedom of Information Act. The Union requested payroll records from the Army Corps of Engineers for the purpose of determining whether a contractor working for the Army was complying with federal prevailing-wage laws. The Army refused to disclose the names and addresses of persons on the payroll records on the ground that disclosure would be an unwarranted invasion of their privacy. The district court ordered the release of the records. It declined to award attorney's fees to the Union, however, based on its finding that the Army had a reasonable basis in law for withholding the requested information. The Union appeals that finding. We find that the district court applied an inappropriate legal standard in making its determination, and reverse the finding that the Army's refusal to disclose had a reasonable basis in law. We remand for reconsideration by the district court in light of the appropriate factors.
 
 BACKGROUND
 
 2
 The United Association of Journeymen & Apprentices of the Plumbing and Pipefitting Industry, Local 598 (the Union), represents plumbing and pipefitting employees in eastern Washington and northeastern Oregon. In February 1985, the Union's general manager requested copies of the payroll records for workers at the McNary Dam project of the Army Corps of Engineers. The Union suspected that a contractor on the site was hiring workers who were not pipefitters to work on piping and hydraulic systems and paying them less than the prevailing wage for pipefitters. The payment of wages on public works projects must be in accordance with prevailing rates established by the Secretary of Labor for each trade. 40 U.S.C. Sec. 276a.
 
 
 3
 The Army denied the Union's request for payroll records. A second request in March was also refused. On April 18, just prior to receipt of the Union's third request, the Army notified the Union that the request had been forwarded to the Army's chief counsel for review. The Union filed suit on May 9 to compel disclosure. On June 4, the payroll records were released, but all employee names, addresses, and social security numbers were deleted so that the records were of no use in determining whether work at the site was done by pipefitters or other workers.
 
 
 4
 On September 5, the Union moved for summary judgment in its disclosure suit. The Army opposed the motion on the ground that the employees' interests in privacy outweighed the public interest in disclosure. There are nine statutory exceptions to the disclosure requirement of the Freedom of Information Act. Exemption (6) authorizes an agency to withhold personnel files when their release "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. Sec. 552(b)(6). On November 1, the Army agreed to release the employees' names, but not their addresses.
 
 
 5
 On November 15, the district court granted the Union's summary judgment motion and directed the Army to supply copies of the payroll records including names and addresses.[1] The trial court, in its discretion, may award fees to a claimant who "substantially prevails" under the Freedom of Information Act. 5 U.S.C. Sec. 552(a)(4)(E). Although the Union was successful in its disclosure action, the district court denied fees on the ground that the Army had a reasonable basis in the law for withholding the names and addresses of employees because "the application of exemption 6 has not been clearly defined in past decisions."
 
 DISCUSSION
 
 6
 The district court's award of fees under the Freedom of Information Act is discretionary, but in its exercise of discretion the court must consider (1) the public benefit resulting from disclosure; (2) the commercial benefit to the complainant resulting from disclosure; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of records had a reasonable basis in law. Church of Scientology v. United States Postal Serv., 700 F.2d 486, 492 (9th Cir.1983). Because an award of fees under the Act is discretionary, we review for an abuse of discretion. Lovell v. Alderete, 630 F.2d 428, 433 (5th Cir.1980). A trial court abuses its discretion when its decision is based on clearly erroneous factual findings or an incorrect legal standard. SEC v. Carter Hawley Hale Stores, Inc., 760 F.2d 945, 947 (9th Cir.1985).
 
 Public Benefit
 
 7
 In its Order Denying Motion for Reconsideration of the attorney's fee issue, the district court acknowledged that there was a possible benefit to the public accruing from the disclosure of the Army payroll records. A strong public interest is served where, as here, the underlying purpose of disclosure is the enforcement of federal laws embodying important congressional policies. See International Bhd. of Elec. Workers, Local 41 v. HUD, 593 F.Supp. 542, 545 (D.D.C.1984) (The interest of the Union in disclosure of payroll records "parallels and serves the public interest as defined by Congress when it passed the very laws that plaintiffs would enforce with the aid of the information which they seek here."), aff'd, 763 F.2d 435 (D.C.Cir.1985).[2]
 
 Commercial Benefit
 
 8
 The district court did not make any findings as to whether the Union would derive a "commercial benefit" and what the "nature of its interest" was, but we note that these are important considerations, which should be weighed in the determination whether a fee award is appropriate. If the Union realized no commercial benefit from the Army's disclosure, it does not follow that this factor should be disregarded, as the district court apparently believed. On the contrary, it would weigh in favor of a fee award, Lovell, 630 F.2d at 432-33, since the fee award section of the Act was intended to encourage complainants who lack substantial pecuniary incentives to pursue their claims. Id. at 433 n. 6.
 
 Nature of Claimant's Interest
 
 9
 Inquiry into the "nature of interest" should lead the court to consider whether the claimant seeks to protect a private, purely commercial interest, as opposed to a scholarly, journalistic, or public interest. Nationwide Bldg. Maintenance, Inc. v. Sampson, 559 F.2d 704, 712 (D.C.Cir.1977) (quoting S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)). Because of the interplay between them, the "commercial benefit" and "nature of interest" factors are often considered together. See Church of Scientology, 700 F.2d at 494. Both factors are intended to distinguish cases in which the claimant has a clear pecuniary or other economic interest in seeking disclosure, so that there is no need for an added incentive to bring a claim under the Act, from those where it is unlikely that a claim would have been brought absent the high probability that fees and costs of suit would be awarded against the intransigent agency.
 
 
 10
 It is conceivable in this case that the Union envisioned some economic benefit to itself or its members from its disclosure suit against the Army. It is a question for the trial court whether there was a commercial benefit to the Union that might flow from disclosure and whether that benefit was so immediate and probable that it was by itself sufficient incentive for the bringing of this suit. If the commercial benefit from disclosure was remote or unlikely, the law presumes that the fee award was a necessary encouragement. Cf. Nationwide, 559 F.2d at 712 (quoting S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1984)) (an award of attorneys' fees is not necessary to ensure the bringing of suit that advances private commercial interests).
 
 Reasonable Basis in Law
 
 11
 In denying fees, the district court relied entirely on the fourth factor, concluding that the Army had a "reasonable basis in law" for withholding its payroll records. The Army based its argument for withholding the records entirely on Minnis v. United States Department of Agric., 737 F.2d 784 (9th Cir.1984), cert. denied, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985), in which we held that privacy interests justified an agency's withholding names and addresses of people who had applied for permits to travel the Rogue River in Oregon.
 
 
 12
 In Minnis we set out four factors to be balanced in determining whether disclosure would be "an unwarranted invasion" within the meaning of Exemption (6). 737 F.2d at 786. These are: "(1) the plaintiff's interest in disclosure; (2) the public interest in disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternate means of obtaining the requested information." Id. The district court looked at these factors and found that Minnis was easily distinguishable from this case. The interest of the claimant in Minnis was entirely commercial, with no conceivable benefit to the public, and release of the requested information could subject the individuals listed to a barrage of mailings and solicitations from advertisers. In this case, disclosure was to serve the public interest in the enforcement of labor laws, and there was no threat that the persons whose privacy interest was asserted by the Army would be harassed as a result of disclosure.
 
 
 13
 Although the district court found that Minnis did not support the Army's decision to withhold its records, it ruled that there had been a reasonable basis for withholding because the application of Exemption (6) was not "clearly defined" in the law. Of course, the application of Exemption (6) to the precise circumstances of this case was not "clearly defined" until the district court's own determination of the issue. Yet at the time the Army elected to withhold its records there were decided cases suggesting very strongly that disclosure was appropriate under these facts.[3] The district court concluded in effect that a lack of clarity in the law excused the Army's reliance upon inapposite authority and its failure to consider other authority that tended to support disclosure of the payroll records. We think that more is required of a federal agency under the Freedom of Information Act.
 
 
 14
 The Freedom of Information Act embodies a strong policy of disclosure and places a duty to disclose on federal agencies. As the district court recognized, "disclosure, not secrecy, is the dominant objective of the Act." Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). "As a final and overriding guideline courts should always keep in mind the basic policy of the FOIA to encourage the maximum feasible public access to government information...." Nationwide, 559 F.2d at 715. As a consequence, the listed exemptions to the normal disclosure rule are to be construed narrowly. See Rose, 425 U.S. at 361, 96 S.Ct. at 1599. This is particularly true of Exemption (6). Exemption (6) protects only against disclosure which amounts to a "clearly unwarranted invasion of personal privacy." That strong language "instructs us to 'tilt the balance [of disclosure interests against privacy interests] in favor of disclosure.' " Washington Post Co. v. Department of Health and Human Servs., 690 F.2d 252, 261 (D.C.Cir.1982) (quoting Ditlow v. Shultz, 517 F.2d 166, 169 (D.C.Cir.1975)).
 
 
 15
 In the Act generally, and particularly under Exemption (6), there is a strong presumption in favor of disclosure that must be indulged not only by the courts, but as well by the agency in its initial determination whether to disclose. Thus the agency's decision must be based upon legal authority that reasonably supports its position that the documents should be withheld. An agency may not refuse to disclose requested documents simply because no prior authority affirmatively requires disclosure under the circumstances.
 
 
 16
 The requirement that the agency support its decision to withhold with reasonable authority places a duty on the agency to analyze the relevant law--to recognize distinguishing factors that make prior cases inapplicable to the case at hand, and to examine cases other than those that tend to support a decision to withhold. In determining whether the agency's legal basis for withholding was "reasonable," therefore, the district court must consider first the authorities cited in support: Do they establish positive reasons for withholding under the present circumstances, or would a reasonable person conclude that they are not applicable to the case? The court must then read the authority proffered by the agency in context, considering whether the plaintiff has produced contrary authority that the agency has ignored or failed to distinguish.
 
 
 17
 Where, as here, an agency states that it is relying on cases that, even viewed in isolation, will not support a decision to withhold, and the plaintiff cites to authority that supports disclosure,[4] the plaintiff has sustained its burden. Before the district court, the Army's argument for withholding the requested records was based entirely on Minnis. Reliance on Minnis was unwarranted first because the facts of that case were clearly distinguishable. More important, Minnis is authority for the opposite result in this case; that is, application of its principles to the facts here leads ineluctably to the conclusion that the information should have been released. If the Army had sought guidance from Minnis, as it asserts it did, it could not have failed to conclude that it was confronted with a request that differed from that made in Minnis and that the very factors that Minnis found dispositive dictated the opposite result in this case. In other words, in explaining why withholding was appropriate in Minnis, the court explained why withholding was inappropriate here.
 
 
 18
 We conclude that, in light of the strong contrary authority cited by the Union, it was not reasonable for the Army to rely on Minnis as a basis to refuse the Union's request for disclosure. We need not consider whether other cases may have supported or undermined the Army's decision. Even if support for withholding might have been found elsewhere, as the Army suggests on appeal, the Army did not, in fact, rely on such authority; it was unreasonable for the Army to base its decision to withhold on the authority it did cite.
 
 CONCLUSION
 
 19
 The district court abused its discretion in applying an incorrect legal standard to the question of whether the Army had a reasonable basis in law for withholding the requested records. The court's conclusion that the law is not entirely clear as applied to the facts of the present case does not make the Army's reliance upon inapposite authority "reasonable." We conclude that the Army had no reasonable basis in law for withholding the McNary dam payroll records. The district court also erred in failing to consider the other factors it was required to balance under our decision in Church of Scientology in determining whether to award fees. Accordingly, we reverse and remand so that the district court may consider the factors that it failed to consider on the motion for summary judgment, and so that it may balance appropriately all factors to determine whether an award of fees is appropriate.
 
 
 20
 REVERSED and REMANDED.
 
 SKOPIL, Circuit Judge, concurring:
 
 21
 I agree that we must remand to allow the district court to balance the four factors listed in Church of Scientology v. United States Postal Serv., 700 F.2d 486, 492 (9th Cir.1983). The court erred in failing to consider all of the factors. See id. Nevertheless, I respectfully disagree with the majority's decision to hold the Army to the case law it argued below and its conclusion that the Army lacked a reasonable basis in law for arguing that Exemption (6) applied.
 
 
 22
 The majority binds the government on appeal to the case law it argued in district court. The quality of advocacy, not the reasonableness of the government's position, becomes the critical factor. To be sure, quality of advocacy and reasonableness are not wholly distinct inquiries; the government may not act in bad faith. Yet they surely are not congruent either. While I would take into account the government's failure to argue helpful authority, I would not give that failure dispositive weight. Reasonableness is an objective, not a subjective, test.
 
 
 23
 In holding the government to the case law it argued below, the majority blurs an initial request for information with a later request for fees. There is a presumption in favor of disclosure under Exemption (6). American Fed'n of Gov't Employees, Local 1345 v. FLRA, 793 F.2d 1360, 1365 (D.C.Cir.1986). There is not a presumption in favor of fees. Aviation Data Serv. v. FAA, 687 F.2d 1319, 1321 (10th Cir.1982); Chamberlain v. Kurtz, 589 F.2d 827, 842 (5th Cir.), cert. denied, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). The plaintiff bears the burden of showing an entitlement to fees. Ginter v. IRS, 648 F.2d 469, 471 (8th Cir.1981) (per curiam). The government's failure to establish an exemption will result in disclosure. That failure, however, should not then inexorably lead to a finding of unreasonableness. The fee award is not automatic. Church of Scientology, 700 F.2d at 492.
 
 
 24
 An examination of case law beyond the lone authority argued below shows that the Army could have made a forceful argument for non-disclosure. At the outset, I note that this court has recognized a privacy interest in names and addresses but has left unclear the extent of the interest. See Minnis v. United States Dep't of Agric., 737 F.2d 784, 787 (9th Cir.1984), cert. denied, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985). In Minnis, the district court found that releasing a list of names and addresses entailed no more than a minimal invasion of privacy. Id. at 786. We disagreed, finding "more than a minimal privacy interest" at stake. Id. at 787.
 
 
 25
 Courts elsewhere have taken a more decided view. The circuits conflict over the weight of the privacy interest in names and addresses. See National Ass'n of Retired Fed. Employees v. Horner, 633 F.Supp. 1241, 1243 (D.D.C.1986). Some courts have tended to minimize the privacy interest in names and addresses. See American Fed'n of Gov't Employees, Local 1760 v. FLRA, 786 F.2d 554, 556 (2d Cir.1986) ("the privacy interest of the average employee in his address is not particularly compelling"); Getman v. NLRB, 450 F.2d 670, 675 (D.C.Cir.1971) (disclosure of names and addresses invades privacy interest "to a very minimal degree"); Horner, 633 F.Supp. at 1243 ("only a slight privacy interest" in names and addresses).
 
 
 26
 Other courts have stressed the privacy interest and found disclosure clearly unwarranted under Exemption (6). See Heights Community Congress v. Veterans Admin., 732 F.2d 526, 529 (6th Cir.) ("an important privacy interest in ... addresses"), cert. denied, 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984); American Fed'n of Gov't Employees, Local 1923 v. United States Dep't of Health and Human Servs., 712 F.2d 931, 932 (4th Cir.1983) ("employees have a strong privacy interest in their home addresses"); Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 136-37 (3d Cir.1974) ("there are few things which pertain to an individual in which his privacy has traditionally been more respected than his own home"); DiPersia v. United States R.R. Retirement Bd., 638 F.Supp. 485, 489 (D.Conn.1986) ("There is little doubt that a substantial privacy interest exists in a list of names and addresses.").[1]
 
 
 27
 Not only do the circuits conflict, but the cases relied upon by the Union were distinguishable. The Union asked for information which included social security numbers and tax information. That request went beyond the request in International Bhd. of Elec. Workers, Local 41 v. HUD, 593 F.Supp. 542 (D.D.C.1984), aff'd, 763 F.2d 435 (D.C.Cir.1985). In HUD, the union asked for copies of certified payroll reports which showed names, employee classifications, wage rates and fringe benefits, but which blocked out social security numbers. 593 F.Supp. at 543. In Van Bourg, Allen, Weinberg & Roger v. NLRB, 728 F.2d 1270 (9th Cir.1984), the NLRB released names and addresses but the information was readily available to the parties to a representation election. Id. at 1274; see also Minnis, 737 F.2d at 788 (emphasizing that distinction).
 
 
 28
 Regardless of whether the Army should have disclosed names and addresses, it probably acted reasonably in refusing to disclose the social security numbers, see Swisher v. Department of Air Force, 495 F.Supp. 337, 340 (W.D.Mo.1980) (social security numbers exempt from disclosure), aff'd, 660 F.2d 369 (8th Cir.1981), and tax information in the payroll records, see Long v. IRS, 825 F.2d 225, 227 (9th Cir.1987) (tax information not disclosable if disclosure creates a significant risk of indirect identification). Disclosure of such information often implicates a substantial privacy interest.
 
 
 29
 I believe the Army had a reasonable argument.[2] I do not know how one could find otherwise where there is a conflict among the circuits, where there is no directly controlling authority from this court or any other court, and where the government may have acted reasonably in withholding some information. Courts have found reasonableness with less under other exemptions. See Crooker v. United States Parole Comm'n, 776 F.2d 366, 369 (1st Cir.1985) (government's original withholding found reasonable because of "a then existing conflict among the circuits"); Fenster v. Brown, 617 F.2d 740, 744 (D.C.Cir.1979) (law "a matter of genuine uncertainty"). The district court did not err in finding reasonableness.
 
 
 
 [1]
 The district court did not mention social security numbers in its order granting summary judgment. Subsequently, in its order denying the Union's motion for reconsideration, the court stated that it had "ordered the release of all information desired by plaintiffs."
 
 
 [2]
 Initially, the district court, relying on Polynesian Cultural Center, Inc. v. NLRB, 600 F.2d 1327 (9th Cir.1979), determined that the public-benefit factor did not weigh in favor of a fee award. In Polynesian Cultural Center, an employer sought from the NLRB an employee affidavit in order to prepare for an unfair labor practice proceeding. The court found that the interest in the document was purely commercial and that no substantial public benefit would result from disclosure. Id. at 1330. Here, the Union was not attempting to defend an unfair labor practice charge, but rather to enforce prevailing wage laws, an activity having substantial public benefit. Thus, Polynesian Cultural Center is inapposite authority to support the proposition that the Union's actions were trivial
 The district court subsequently determined that there was some public benefit based on this court's holding that obtaining a ruling that certain information is not withholdable benefits the public. See Church of Scientology v. United States Postal Serv., 700 F.2d 486, 493 (9th Cir.1983). Although we agree that there was a public benefit under Church of Scientology, we emphasize that the more significant benefit in this case lies in the Union's attempt to enforce federal law.
 
 
 [3]
 In Getman v. NLRB, 450 F.2d 670 (D.C.Cir.1971), the court held that the names and addresses of employees who had been eligible to vote in union representation elections could be released to law professors who planned to telephone the employees to request their participation in interviews. The court stated that the purpose of Exemption (6) is
 to guard against unnecessary disclosure of files of such agencies as the Veterans Administration or the Welfare Department ... which would contain "intimate details" of a "highly personal" nature. The giving of names and addresses is a very much lower degree of disclosure; in themselves a bare name and address give no information ... which is embarrassing.
 450 F.2d at 675. See also Van Bourg, Allen, Weinberg & Roger v. NLRB, 728 F.2d 1270 (9th Cir.1984) (exemption (6) does not prevent disclosure to union of names and addresses of employees eligible to vote in representation election for purpose of challenging conduct of election in decertification proceeding); International Bhd. of Elec. Workers, Local 41 v. HUD, 763 F.2d 435 (D.C.Cir.1985) (no privacy violation in release of government contractors' payroll reports for investigation of possible prevailing wage law violations).
 
 
 [4]
 The union, in its support of its summary judgment motion, discussed the cases cited at 1461 n. 2, supra. The Army, in its 23-line long responsive memorandum, discussed only Minnis
 
 
 [1]
 Courts have considered whether names and addresses should be disclosed in a wide variety of circumstances. Employee union authorization cards may not be disclosed to employers. See Madeira Nursing Center, Inc. v. NLRB, 615 F.2d 728, 731 (6th Cir.1980); Pacific Molasses Co. v. NLRB, 577 F.2d 1172, 1183 (5th Cir.1978); Committee on Masonic Homes of R.W. Grand Lodge v. NLRB, 556 F.2d 214, 221 (3d Cir.1977). Commercial interest weighs against disclosure. See Minnis, 737 F.2d at 787; Wine Hobby, 502 F.2d at 137. Courts hesitate to require disclosure if it will cause stigma or embarrassment. See Air Force v. Rose, 425 U.S. 352, 381, 96 S.Ct. 1592, 1608, 48 L.Ed.2d 11 (1976) (files of disciplined cadets released if deletion of identifying references sufficient to protect cadets' privacy interests); Harbolt v. Department of State, 616 F.2d 772, 775-76 (5th Cir.1980) (non-disclosure of names and addresses of United States citizens imprisoned abroad), cert. denied, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). Cf. Core v. United States Postal Serv., 730 F.2d 946, 948-49 (4th Cir.1984) (disclosure of information about successful, but not unsuccessful, applicants); Kurzon v. Department of Health and Human Servs., 649 F.2d 65, 68 (1st Cir.1981) (no threat of stigma to disclose names and addresses of applicants rejected for National Cancer Institute research grants)
 
 
 [2]
 FOIA's legislative history indicates that Congress thought that fees should not be awarded when the government had "a colorable basis" for withholding information. Church of Scientology, 700 F.2d at 492 n. 6 (quoting S.Rep. No. 93-854, 93rd Cong. 2nd Sess. 19 (1974)). See also Miller v. United States Dep't of State, 779 F.2d 1378, 1390 (8th Cir.1985) (colorably reasonable legal basis); Aviation Data Serv., 687 F.2d at 1323 (reasonable or colorable basis); LaSalle Extension Univ. v. F.T.C., 627 F.2d 481, 484, 486 (D.C.Cir.1980) (reasonable or colorable basis)