Thomas ·G. HOPKINS, as President of Local 17 of the International Union of Operating Engineers, an Unincorporated Association, Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; United States of America, Defendants–Appellees.

No. 967, Docket 90–6269.

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1991.

Decided April 1, 1991.

John A. Collins, Buffalo (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, of counsel), for plaintiff-appellant.

John F. Daly, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Leonard Schaitman, U.S. Dept. of Justice, Washington, D.C., Dennis C. Vacco, U.S. Atty. W.D. N.Y., Kathleen M. Mehltretter, Buffalo, of counsel), for defendants-appellees.

Before OAKES, Chief Judge, and MINER and WALKER, Circuit Judges.

OAKES, Chief Judge:

The Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA"), was enacted in 1966 to create a broad right of access to official information. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73, 109 S.Ct. 1468, 1481–82, 103 L.Ed.2d 774 (1989). The general philosophy of the FOIA is " 'full agency disclosure unless information is exempted under clearly delineated statutory language.' " *Department of Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)). This appeal explores the murky limits of three of the FOIA's "clearly delineated" exemptions.

## BACKGROUND

Local 17 of the International Union of Operating Engineers (the "Union") is engaged in government construction projects. By letters dated October 18, 1989 and January 25, 1990, the Union requested the Buffalo office of the United States Department of Housing and Urban Development ("HUD") to provide access to certain records pursuant to the FOIA. The requested records related to a HUD-assisted public housing project in Dunkirk, New York, and included (1) HUD inspector reports concerning the general contractor of the Dunkirk project and all of its subcontractors (collectively, the "contractors"), and (2) the contractors' certified payroll records. The inspector reports are prepared by HUD officials, who are required by law to monitor the progress of all HUD-sponsored construction projects. The payroll records are prepared by the contractors and filed weekly with the local housing authority in charge of the Dunkirk project. HUD receives and maintains copies of these records for use in monitoring and enforcing the prevailing wage provisions of the Davis–Bacon Act, 40 U.S.C. § 276a *et seq.*

In response to the Union's FOIA requests, HUD released various documents relating to the Dunkirk project. HUD withheld its inspector reports, however, citing 24 C.F.R. § 15.21(a)(5), HUD's regulatory counterpart to the FOIA's exemption for predecisional, deliberative memoranda, 5 U.S.C. § 552(b)(5) ("Exemption 5"). In addition, although HUD released the certified payroll records, it first deleted all employee names, addresses, and social security numbers, citing the FOIA's principal privacy exemption, 5 U.S.C. § 552(b)(6) ("Exemption 6").[1]

Following HUD's refusals to disclose the inspector reports and unredacted payroll records, the Union filed two administrative appeals, arguing that Exemption 5 was inapplicable to the inspector reports, and that denial of the names and addresses in the payroll records was not warranted under

---

1. HUD also invoked FOIA Exemption 3, which exempts from disclosure matters specifically withholdable under other statutes, and the Privacy Act of 1974, 5 U.S.C. § 552a. HUD has not, since the inception of this litigation, relied on these provisions as grounds for nondisclosure, and we therefore do not address them in this decision.

Exemption 6.[2] HUD failed to respond to either of the Union's appeals.

Having exhausted all administrative remedies, Thomas G. Hopkins, as President of the Union, commenced this action under 5 U.S.C. § 552(a)(4)(B) in the United States District Court for the Western District of New York, seeking disclosure of the withheld information. Both parties moved for summary judgment. Upon consideration of the opposing affidavits and declarations, and after hearing oral argument, the district court, John T. Curtin, *Judge,* granted appellees' motion for summary judgment and dismissed the complaint. In reaching this conclusion, the court found that the inspector reports were properly withheld under Exemption 5, and that the Union's attempt to use the FOIA to obtain individualized employee information from the payroll records was "impermissible" under 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), which creates a broad privacy exemption for documents "compiled for law enforcement purposes." The court did not pass on whether the payroll records could also have been withheld under Exemption 6, as HUD had maintained.

Hopkins now appeals, seeking reversal as to both the HUD inspector reports and the certified payroll records. For the reasons set forth below, we vacate the district court's judgment with regard to the inspector reports, and remand for a determination whether those reports contain reasonably segregable non-exempt information. With regard to the payroll records, however, we affirm.

## DISCUSSION

An agency's decision to withhold records requested under the FOIA is subject to *de novo* judicial review. *See* 5 U.S.C. § 552(a)(4)(B) (1988). In any such review, "the burden is on the agency to sustain its action." *Id.*

### A. *HUD Inspector Reports.*

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (1988). By this language, Congress intended to incorporate into the FOIA all the normal civil discovery privileges. *See United States v. Weber Aircraft Corp.,* 465 U.S. 792, 799, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). One privilege that Congress specifically had in mind was the "deliberative process" or "executive" privilege, which protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions. *Sears, Roebuck & Co.,* 421 U.S. at 150, 95 S.Ct. at 1516; *Local 3, IBEW v. NLRB,* 845 F.2d 1177, 1180 (2d Cir.1988). As Congress recognized in enacting the FOIA, " 'efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to "operate in a fishbowl." ' " *EPA v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973) (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)).

■ There are two requirements for invocation of the deliberative process privilege. First, the document must be "predecisional," that is, "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975). Second, the document must be "deliberative," that is, "actually ... related to the process by which policies are formulated." *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (en banc). Thus, the privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which govern-

---

**2.** The Union has at no time challenged HUD's decision to delete the social security information from the payroll records.

mental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. at 1516 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966)). The privilege does not, as a general matter, extend to purely factual material. *See Local 3, IBEW*, 845 F.2d at 1180.

■ Applying these principles to the case at hand, we agree with the district court that the HUD inspector reports are protected by the deliberative process privilege. First, because HUD inspectors themselves lack any authority to take final agency action, their reports are necessarily predecisional. In addition, as HUD's uncontroverted declarations relate, the reports contain HUD staff inspectors' professional opinions on the progress and quality of construction work, and recommendations to higher officials that various agency actions should be taken. Because these opinions and recommendations enable HUD to manage its projects and negotiate with its contractors effectively, they are related to the deliberative process by which HUD policies are formulated.

■ The fact that the reports constitute part of the deliberative process does not end our inquiry, however. Under 5 U.S.C. § 552(b), "[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt." HUD has admitted that its inspector reports contain some purely factual observations that are not, in and of themselves, privileged. The question remains, then, whether these factual observations are "inextricably intertwined" with the privileged opinions and recommendations such that disclosure would "compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5," *Mink*, 410 U.S. at 92, 93 S.Ct. at 838; *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 85 (2d Cir.1979), or whether they are "reasonably segregable" from the opinions and recommendations and therefore subject to disclosure.

■ Under 5 U.S.C. § 552(a)(4)(B), the agency has the burden of establishing the necessity of keeping its records' factual observations undisclosed. *See Founding Church of Scientology v. National Security Agency*, 610 F.2d 824, 830 (D.C.Cir. 1979); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973) (requiring agency to supply detailed index that, among other things, separates disclosable from exempt material), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). *Compare Lead Indus.*, 610 F.2d at 88 (agency affidavits and *Vaughn* indices sufficient to support exemption) *with Reader's Digest Ass'n, Inc. v. FBI*, 524 F.Supp. 591, 594–95 (S.D.N.Y.1981) (agency affidavits falling short of document-by-document review of the material inadequate to support agency's summary judgment motion). Here, nothing in the district court's opinion suggests that it ever considered whether the factual data in the inspector reports could reasonably be segregated from the privileged material. Moreover, HUD has offered no details as to the contents of specific reports, but only asserted in a conclusory fashion that any factual observations contained in the reports are "inextricably intertwined" with the reports' privileged opinions and recommendations.[3] Under these circumstances, the proper disposition is to remand with instructions to the district court to examine the inspector reports *in camera, see* 5 U.S.C. § 552(a)(4)(B), to

---

**3.** According to the Director of HUD's Buffalo office:

> 6. It can be said that these reports are an inextricable compilation of fact, opinion and recommendation which are prepared either in the field or immediately upon return to the office.... It would be impossible to separate "facts" from "opinions" on any principled basis which would fairly protect the confidentiality of the inspectors. Therefore, we cannot adequately protect the interest of the Secretary and the taxpayer without the guarantee

of complete confidentiality of inspection reports in their totality.

Supplemental Supporting Declaration of Robert A. Rifenberick, July 23, 1990. The Area Manager of HUD's Buffalo office stated simply:

> 8. ... These documents are primarily opinion of the subordinate and, to the extent they contain facts, such facts are inextricably intertwined with the opinions and recommendations.

Supporting Declaration of Joseph B. Lynch, June 19, 1990.

determine whether their factual and privileged contents are, as HUD avers, "inextricably intertwined." *See Lead Indus.*, 610 F.2d at 88 ("'[W]here the record is vague or the agency claims too sweeping ... a District Court should conduct an *in camera* examination to look for segregable non-exempt matter.'" (quoting *Weissman v. CIA*, 565 F.2d 692, 698 (D.C.Cir.1977)); *Sterling Drug Inc. v. Harris*, 488 F.Supp. 1019, 1025 (S.D.N.Y.1980).

### B. *Certified Payroll Records.*

■ The Davis–Bacon Act, 40 U.S.C. §§ 276a *et seq.*, requires that workers employed on federal construction projects be paid no less than the wage "prevailing" for similar workers in the area. To demonstrate compliance with wage standards, federal contractors are required to submit weekly certified statements with respect to the wages paid each affected employee. *See* 40 U.S.C. § 276c (1988); 29 C.F.R. § 3.1 *et seq.* (1990). Such statements, referred to as "payroll records," contain detailed information regarding each employee working on a particular project, including the employee's name, address, social security number, job classification, hourly rate of pay, number of hours worked during the reporting period, wages and fringe benefits paid, and deductions made. *See* 29 C.F.R. § 3.4(b). Before releasing copies of the payroll records to appellant, HUD deleted all names, addresses and social security numbers. HUD supports its decision to delete this identifying information by reference to the FOIA privacy exemptions.

FOIA Exemptions 6 and 7(C) protect personal privacy interests threatened by disclosure of agency records. Exemption 6 provides that agencies need not release "personnel ... medical ... and similar files"[4] if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1988). Exemption 7(C) affords a somewhat broader degree of protection to privacy interests threatened by the release of records or

information "compiled for law enforcement purposes." *See Reporters Committee*, 489 U.S. at 756, 109 S.Ct. at 1472. The standard under Exemption 7(C) is whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (1988).

The district court found that the payroll records were "compiled for law enforcement purposes" within the meaning of Exemption 7(C) because they were "needed to monitor compliance with federal labor standards." Applying that provision, then, the court held that the individualized employee information contained in the records could not be made available to the public. While we agree with the district court that release of the requested information would constitute an impermissible invasion of privacy, we express no opinion as to the district court's finding that payroll records are "compiled for law enforcement purposes" within the meaning of Exemption 7(C). Rather, we hold that the unredacted records are protected even under the more exacting standard of Exemption 6.

Exemption 6, like Exemption 7(C), turns on whether an invasion of privacy is "unwarranted." This language requires an analysis unusual under the FOIA, involving a balancing of the harm to the individual whose privacy would be breached against the public interest that would be served by disclosure. *See Rose*, 425 U.S. at 372, 96 S.Ct. at 1604. In other words, whether documents are protected under the FOIA privacy exemptions turns on whether the privacy interest in nondisclosure of the documents outweighs the public interest in their release.

The Supreme Court recently addressed the first side of this balance in *Reporters Committee, supra.* In that case, the Court recognized that the term "privacy" encompasses a wide range of interests, and that, in using that term, Congress intended to afford broad protection against the release of information about individual citi-

---

**4.** It is undisputed that the payroll records are "similar files" within the meaning of Exemption 6.

zens.[5] Rejecting the "cramped" view of privacy advanced by the requester in that case, *id.* 489 U.S. at 763, 109 S.Ct. at 1476, the Court concluded that the term privacy encompasses all interests involving "the individual's control of information concerning his or her person." *Id.* Measured by this standard, we have no doubt that individual private employees have a significant privacy interest in avoiding disclosure of their names and addresses, *see, e.g., NARFE v. Horner,* 879 F.2d 873, 875 (D.C.Cir.1989) (citing cases), *cert. denied,* — U.S. —, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990), particularly where, as here, the names and addresses would be coupled with personal financial information, *see, e.g., id.* at 876; *Aronson v. HUD,* 822 F.2d 182, 186 (1st Cir.1987).

To support the contention that there are no significant privacy interests threatened in this case, appellant relies on three decisions that ordered agencies to release identifying information in payroll records to requesting unions. *See IBEW Local Union No. 5 v. HUD,* 852 F.2d 87 (3d Cir. 1988); *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Local 598 v. Department of Army,* 841 F.2d 1459 (9th Cir.1988); *IBEW, Local 41 v. HUD,* 593 F.Supp. 542 (D.D.C.1984), *aff'd,* 763 F.2d 435 (D.C.Cir.1985). All three were decided prior to *Reporters Committee,* however, and are of doubtful authority in light of that opinion. *IBEW Local Union No. 5,* for example, reasons that employees of federal contractors have a decreased expectation of privacy in their salaries because some information regarding their salaries is made public pursuant to the Davis–Bacon Act. *See* 852 F.2d at 89. *Reporters Committee,* however, undermines this reasoning by holding that the partial disclosure of information does not alter the privacy interests implicated by the broader disclosure of that information through the FOIA. *See* 489 U.S. at 763–64, 109 S.Ct. at 1476–77. Likewise, the second decision, *United Ass'n of Journeymen,* insofar as it turns on the intentions of the specific requester, *see* 841 F.2d at 1462, runs counter to the principle set forth in *Reporters Committee* that privacy analysis cannot turn on the purposes for which information is requested, nor on the identity of the requesting party, *see* 489 U.S. at 771, 109 S.Ct. at 1480. Finally, *IBEW, Local 41* rests squarely on the premise that Exemption 6 only protects individuals from "embarrassing revelation[s]," 593 F.Supp. at 544, a premise that later courts have found to be at odds with the broad understanding of privacy recognized in *Reporters Committee, see, e.g., NARFE,* 879 F.2d at 875; *Halloran v. Veterans Admin.,* 874 F.2d 315, 321 (5th Cir.1989).

Moving now to the other side of the privacy scale, we must determine the weight of the public interest that would be served by disclosure of the requested information. Once again, we find guidance in *Reporters Committee.* According to the Court, the public interest in disclosure of a requested document must be measured in terms of the relationship of that document to the FOIA's central purpose—" 'to open agency action to the light of public scrutiny.'" 489 U.S. at 772, 109 S.Ct. at 1481 (quoting *Rose,* 425 U.S. at 372, 96 S.Ct. at 1604). The Court reasoned:

> Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.... [I]n the typical case in which one private citizen is seeking information about another ... the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records.... [R]esponse to this request would not shed any light on the conduct of any Government agency or official.... Thus, it should come as no surprise that in none of our cases construing

---

**5.** While *Reporters Committee* dealt with Exemption 7(C), its teachings apply to the analogous provisions of Exemption 6 as well. *See FLRA v.* *United States Dep't of Treasury,* 884 F.2d 1446, 1451–52 (D.C.Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 864, 107 L.Ed.2d 948 (1990).

the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen.

*Id.* 489 U.S. at 773, 774–75, 109 S.Ct. at 1481–82. Thus, with regard to the FBI "rap sheets" at issue in *Reporters Committee,* the Court held that the public interest in a person's criminal history was "not the kind of public interest for which Congress enacted the FOIA," *id.* at 774, 109 S.Ct. at 1482, and so bore no weight on the FOIA's privacy scale.

Here, appellant alleges two distinct reasons why disclosure of the certified payroll records is in the public interest. The first is that the records would enable the Union to determine whether the Dunkirk project contractors were paying their workers at least the prevailing wages required by the Davis–Bacon Act. As discussed above, however, whatever public interest there may be in knowing whether private parties are violating the law is not the sort of public interest advanced by the FOIA, and has no weight in an Exemption 6 balancing.

The second reason that disclosure of the payroll records is in the public interest, appellant argues, is that the records would enable the Union to determine whether HUD is fairly and adequately enforcing the prevailing wage laws with respect to the Dunkirk project. While assertions of a public interest in "monitoring" governmental operations "have not been viewed favorably by the courts," *Heights Community Congress v. Veterans Admin.,* 732 F.2d 526, 530 (6th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984), we accept this interest as within the ambit of "public interests" recognized in *Reporters Committee. Cf. IBEW Local Union No. 5,* 852 F.2d at 91; *IBEW, Local 41,* 763 F.2d at 436 (citing cases).

The simple invocation of a legitimate public interest, however, cannot itself justify the release of personal information. Rather, a court must first ascertain whether that interest would be served by disclosure. *See Halloran,* 874 F.2d at 323. Here, disclosure of the names and addresses sought by appellant would shed no light on HUD's performance in enforcing the prevailing wage laws. *See Dunkelberger*

*v. Department of Justice,* 906 F.2d 779, 781 (D.C.Cir.1990) (noting that release of the names of censured individuals would not advance the public interest in ensuring that a government investigation was comprehensive); *see also NARFE,* 879 F.2d at 879; *Halloran,* 874 F.2d at 324. Rather, disclosure of this information would serve the public interest only insofar as it would allow the Union to contact individual employees, who may then dispute the accuracy of the data reflected in the records, and so reveal violations of the prevailing wage laws that HUD, through proper diligence, should have detected. Were we to compel disclosure of personal information with so attenuated a relationship to governmental activity, however, we would open the door to disclosure of virtually all personal information, thereby eviscerating the FOIA privacy exemptions. For this reason, we find that disclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official. *See Reporters Committee,* 489 U.S. at 774, 109 S.Ct. at 1482; *NARFE,* 879 F.2d at 879.

In any event, even if we were to agree with appellant that the public interest is advanced by the disclosure of information that facilitates an investigation of an agency's performance, we would still conclude that this interest is outweighed here by the privacy interests employees have in controlling dissemination of their names, addresses and wage information. Indeed, the likelihood that the Union would use the requested identifying information to contact employees at their homes dramatically increases the already significant threat to the employees' privacy interests that disclosure of this information would entail. *See NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 239–41, 98 S.Ct. 2311, 2325–26, 57 L.Ed.2d 159 (1978); *NARFE,* 879 F.2d at 876; *accord FLRA v. United States Dep't of the Treasury,* 884 F.2d 1446, 1452–53 (D.C.Cir.1989) (finding that investigatory advantages of direct access were insufficient to outweigh workers' significant privacy interest in their names and home addresses), *cert. denied,* —— U.S. ——, 110 S.Ct. 864, 107 L.Ed.2d 948 (1990).

Accordingly, because there is little or no public interest in disclosure of the identifying information contained in the certified payroll records, and because there are significant personal privacy interests at stake, disclosure of this information is "clearly unwarranted" under FOIA Exemption 6. The district court's grant of summary judgment as to these records is therefore affirmed. As to the HUD inspector reports, however, summary judgment was improper. The district court's judgment is therefore vacated in part, and the case remanded with instructions to conduct an *in camera* review of the inspector reports to determine whether their factual elements are reasonably segregable.

Judgment in accordance with opinion.